1
2
3
4
5
6
7

# UNITED STATES  DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| MARK LESTER, | No. C 12-05491 LB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| J.P. MORGAN CHASE BANK, et al., | |
| Defendants. | [Re: ECF No. 8] |
| _____/ | |

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

### INTRODUCTION

Plaintiff Mark Lester instituted this action against defendants J.P. Morgan Chase Bank, N.A. ("Chase") and Washington Mutual Bank ("WaMu") to, among other things, stop Chase from foreclosing on his home.  *See generally* Complaint, ECF No. 1.[1]  Chase now moves to dismiss Mr. Lester's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Motion, ECF No. 8.[2]

---

[1] Citations are to the Electronic Case File ("ECF"), with pin cites to the electronically-generated page numbers at the top of the document.

[2] Mr. Lester timely served Chase with the complaint, and both Mr. Lester and Chase consented to the undersigned's jurisdiction.  Proof of Service, ECF No. 4; Consent (Mr. Lester), ECF No. 5; Consent (Chase), ECF No. 9.  But there is no indication in the record that Mr. Lester ever served WaMu with the complaint, and WaMu has neither consented to nor declined the undersigned's jurisdiction.  *See generally* Docket.  Nevertheless, because an unserved defendant is not a party for purposes of consent under 28 U.S.C. § 636(c), the undersigned may rule on Chase's motion to dismiss.  *See Ornelas v. De Frantz*, C 00-1067 JCS, 2000 WL 973684, at *2 n.2 (N.D. Cal. June 29, 2000) (citing *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995)); *cf. United States v.*

1   Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without

2   oral argument and vacates the March 7, 2013 hearing.  For the reasons stated below, the court

3   **GRANTS IN PART** and **DENIES IN PART** Chase's motion.

                                          **STATEMENT**

5       On April 30, 2007, Mr. Lester borrowed $2,292,500 from WaMu to purchase property located at

6   934 Baileyana Road in Hillsborough, California (the "Property").  Complaint, ECF No. 1 ¶¶ 20-21.

7   Mr. Lester and WaMu executed two documents: a promissory note in the amount of $2,292,500 that

8   names Mr. Lester as "Borrower" and WaMu as "Lender" (the "Note"), and a deed of trust that

9   secures the Note and names Mr. Lester as "Borrower," WaMu as "Lender," and California

10  Reconveyance Corporation ("CRC") as "Trustee" (the "Deed of Trust").  *Id.*, Exh. A (Note and

11  Deed of Trust); Request for Judicial Notice ("RJN"), ECF No. 8-1, Exh. A (Deed of Trust).[3]  The

---

13  *Real Property*, 135 F. 3d 1312, 1316 (9th Cir. 1997) (holding that the consent of an individual who
    was not a party was not a precondition to the magistrate judge's jurisdiction).

15      [3] Chase asks the court to take judicial notice of the following documents: (1) a deed of trust
16  that was recorded in the official records of San Mateo County on May 15, 2007; (2) a notice of
    default that was recorded in the official records of San Mateo County on November 18, 2010; (3) a
17  notice of trustee's sale that was recorded in the official records of San Mateo County on February
    22, 2011; (4) a notice of rescission of the declaration of default and demand for sale that was
18  recorded in the official records of San Mateo County on May 20, 2011; and (5) a notice of default
    that was recorded in the official records of San Mateo County on August 28, 2012.  RJN, ECF No.
19  8-1, Exhs. A-E.  And Mr. Lester asks the court to take judicial notice of an assignment of deed of
    trust that was recorded in the official records of San Mateo County on November 18, 2010.
20  Plaintiff's RJN, ECF No. 11-1, Exh. A.

22      Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not
    subject to reasonable dispute because it: (1) is generally known within the trial court's territorial
23  jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot
    reasonably be questioned."  Fed. R. Evid. 201(b).  A "high degree of indisputability is the essential
24  prerequisite" to taking judicial notice and "the tradition [of taking judicial notice] has been one of
    caution in requiring that the matter be beyond reasonable controversy."  Fed. R. Evid. 201(a) & (b)
25  advisory committee's notes (emphasis added).  A court, then, may take judicial notice of undisputed
    facts contained in public records, but it may not take judicial notice of disputed ones.  *See Lee v.*
26  *City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also Muhammad v. California*,
    C-10-1449-SBA, 2011 WL 873151, at *4 (N.D. Cal. Mar. 11, 2011) (denying request for judicial
27  notice of an address contained on a complaint filed in another case because the "underlying facts
    relevant to Plaintiff's residence are disputed and otherwise do not meet the requirements of Rule

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Deed of Trust states, in relevant part, that "the Note or a partial interest in the Note (together with

2   this Security Instrument) can be sold one or more times without prior notice to Borrower [Mr.

3   Lester]" and that "Borrower [Mr. Lester] irrevocably grants and conveys to Trustee [CRC], in trust,

4   with power of sale," the Property.  RJN, ECF No. 8-1, Exh. A.

5       Mr. Lester alleges that WaMu "thereafter sold (or securitized) [his] loan into the Wa[M]u

6   Mortgage Pass-Through Certificates Series 2007-HY7 Trust" (the "WaMu 2007-HY7 Trust").

7   Complaint, ECF No. 1 ¶ 22.  WaMu "remained the server" of the WaMu 2007-HY7 Trust, and

8   "LaSalle Bank (Bank of America)" is the "Trustee" of the WaMu 2007-HY7 Trust.  *Id.*  Mr. Lester

9   further alleges that the pooling and service agreement that created the WaMu 2007-HY7 Trust

10  names "LaSalle Bank National Association" as "Trustee," and states that "[t]he assets of the [WaMu

11  2007 HY7 Trust] shall remain in the custody of the Trustee of the Custodian, on behalf of the

12  [WaMu 2007 HY7 Trust], and shall be owned by the [WaMu 2007 HY7 Trust]."  *Id.* ¶ 23.  He

13  further alleges that the "closing date" for assets to be transferred to the WaMu 2007-HY7 Trust was

14  June 25, 2007.  *Id.* ¶ 24.

15      On September 25, 2008, the Office of Thrift Supervision closed WaMu and appointed the FDIC

16  as receiver.  *See id.* ¶ 24 & n.1.  On the same date, Chase entered into a purchase and assumption

17  agreement with the FDIC by which Chase acquired certain assets and assumed certain liabilities of

18  WaMu.  *See id.*

19      Concerned about declining property values and the increase in his mortgage payments that was

20  scheduled to take place in 2014, Mr. Lester contacted Chase, who apparently represented that it was

21  the lender, in November 2008 to inquire about receiving a loan modification.  *Id.* ¶ 62.  At some

22  point between then and March 2010, it appears that Mr. Lester received a trial loan modification,

23  pursuant to which Mr. Lester made three partial payments.  *See id.* ¶ 65.  Thereafter, Mr. Lester

24  alleges that he "was told by Chase representatives that they could not modify his loan unless he was

25

26  201").  Here, neither party objects to the court taking judicial notice of the existence of these

27  documents—all of which are public records—but Mr. Lester does dispute the "facts" contained
    within them (and, in fact, this appears to be the basis of one of the theories of his case).  Therefore,

28  the court takes judicial notice only of the existence of the documents.

behind in [his] payments." *Id.* "[I]n reliance o[n] this representation, [he] stopped making payments because no one at Chase would contact him modification unless he was in arrears." *Id.* Chase "eventually contacted [him] and told him to submit financial information for a loan modification." *Id.* On March 10, 2010, Mr. Lester "faxed to Betty of Chase at (866) 282-5682 all requested information for loan modification." *Id.* On June 12, 2010, Mr. Lester "received a letter from Chase stating that [it] could not continue to review his modification because [he] was in a middle of a 'Trial Period Plan,'" although "in the same letter Chase again requested addition information within 30 days." *Id.* On June 29, 2010, Mr. Lester "faxed to Tamura Croslin of Chase at (866) 221-1019 a new package with all supporting document[s]." *Id.* Chase, however, "claimed [it] never received the information." *Id.* On July 7, 2010, Mr. Lester "sent to Tamura Croslin at (866) 221-1019 information as specified," and he "later ended up hand delivering the file to the Walnut Creek Home Loan Modification Center and meeting with Christine Dreu of Chase and going through all of the information with her because Chase claimed to have lost the information and would not accept the information by email." *Id.* Finally, on September 23, 2010, the trial loan modification expired "due to [Mr. Lester's] alleged failure to provide needed information, the same information Plaintiff sent to Chase on at least 4 separate occasions, with numerous updates as time went on." *Id.*

On November 18, 2010, apparently at the request of CRC, an Assignment of Deed of Trust was recorded in the official records of San Mateo County (the "Assignment"). *Id.* ¶ 25, Exh. D; Plaintiff's RJN, ECF No. 11-1, Exh. A. It is signed by "Colleen Irby, Officer" of Chase (as successor in interest to WaMu) and states, in relevant part, that "the undersigned hereby grants, assigns and transfer to Bank of America, National Association successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-HY7 Trust all beneficial interest under" the Deed of Trust, "as Trustor." Complaint, ECF No. 1, Exh. D; Plaintiff's RJN, ECF No. 11-1, Exh. A. Mr. Lester, however, alleges that Ms. Irby was an employee of CRC, and not Chase, at the time she signed the Assignment. Complaint, ECF No. 1 ¶ 26.

On that same date, CRC, "as Trustee," recorded a notice of default in the official records of San Mateo County which indicated that Mr. Lester was $105,745.40 in arrears on his loan. *Id.* ¶ 25; RJN, ECF No. 8-1, Exh. B.

1    Thereafter, Mr. Lester "sent in another loan modification packet at the request of Chase."

2  Complaint, ECF No. 1 ¶ 65.  On January 5, 2011, Mr. Lester "received a letter stating that he was

3  not qualified for [the Home Affordable Modification Program ("HAMP")] because his loan was too

4  large," information that, Mr. Lester alleges, "Chase obviously knew at the time [he] first submitted

5  the loan modification information."  *Id*.

6    On February 22, 2011, CRC, "as Trustee" under the Deed of Trust, recorded a notice of trustee's

7  sale in the official records of San Mateo County.  *Id*. ¶ 25; RJN, ECF No. 8-1, Exh. C.  The notice

8  states, in relevant part, that "the present beneficiary under such Deed of Trust, has executed and

9  delivered to said Trustee [CRC], a written Declaration and Demand for Sale, and has deposited with

10  said duly appointed Trustee [CRC], such Deed of Trust and all documents evidencing the

11  obligations secured thereby, and has declared and does hereby declare all sums secured thereby

12  immediately due and payable and has elected and does hereby elect to cause the trust property to be

13  sold to satisfy the obligations secured thereby."  RJN, ECF No. 8-1, Exh. C.

14    In May 2011, Mr. Lester "immediately applied once again for loan modification" and continued

15  "to make regular payments."  Complaint, ECF No. 1 ¶ 65.

16    On May 20, 2011, CRC, again "as Trustee" under the Deed of Trust, recorded a notice of

17  rescission of the February 22, 2011 notice of trustee's sale.  *Id*. ¶ 25; RJN, ECF No. 8-1, Exh. D.

18  The notice of rescission lists the "Beneficiary" of the Deed of Trust as WaMu and states, in relevant

19  part, that "[t]he Beneficiary under that certain Deed of Trust hereinabove described [WaMu],

20  heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale"

21  and that "[n]otice was heretofore given by the Beneficiary [WaMu], of breach of the obligations for

22  which said Deed of Trust is security and of election to cause to be sold the property therein

23  described."  RJN, ECF No. 8-1, Exh. D.

24    On June 24, 2011, Mr. Lester "received a letter declining his eligibility for HAMP."  Complaint,

25  ECF No. 1 ¶ 65.  After that, Mr. Lester "was told once again that he could not modify his loan or get

26  any attention from Chase while he was making payments," so he "stopped making payments in

27  November 2011."  *Id*.

28    On January 30, 2012, Mr. Lester "received a letter notifying him that he was in default on the

C 12-05491 LB
ORDER

1   loan and $22,000 in arrears" on his loan." *Id*. He then "once again submitted all of the financial

2   statements as requested," and on March 30, 2012, he "submitted another loan modification

3   application with permissions to look at tax returns, credit report authorization, insurance information

4   and property tax bills." *Id*.

5        On May 4, 2012, Mr. Lester "submitted his fourth loan modification request." *Id*. On July 12,

6   2012, Mr. Lester "received a letter requesting additional financial information," and on July 14,

7   2012, he submitted the requested information. *Id*. On July 20, 2012, he "received a letter from

8   Chase notifying him that he would [receive] an answer to the loan modification by August 2, 2012."

9   *Id*. Mr. Lester "agreed and made an appointment with a Chase appraiser to come to his home to

10  appraise the property for the loan modification," but "[a]fter the appointment was set, the appraiser

11  called [him] and told him that she [the appraiser] was not qualified to appraise the property because

12  the value of the loan was over $1,000,000 and that Chase would reschedule with another appraiser."

13  *Id*. Mr. Lester "never heard back." *Id*. On July 30, 2012, Mr. Lester "received a letter from Chase

14  notifying him that he would receive an update on the loan modification by August 14, 2012," and

15  "[a]nother appraiser called to schedule an appointment toward the end of August." *Id*. On August 2,

16  2012, he "received a letter from Chase indicating that there 'was help available at Chase at no fee'

17  and that [he] should contact Chase and apply for a loan modification." *Id*. On August 13, 2012, he

18  "received a letter from Chase notifying him to expect an update on the loan modification by August

19  28, 2012." *Id*. Chase then "introduced to [him] a new representative, Hillary Riley at (877)

20  496-9032," and he "left several messages for [her] several times and received only one voicemail

21  message after numerous attempts and messages." *Id*.

22       Then, "[a]n appraiser showed up to the property when [Mr. Lester] was not present" and "did not

23  leave a business card." *Id*. "A week later [Mr. Lester] checked in with Johana Garcia Ardon,

24  apparently the Chase representative [who] replaced Hillary Riley." *Id*. "Johana explained that

25  [Chase] had not received the appraisal." *Id*. Mr. Lester "left a voicemail with the second appraiser

26  but received no return message after several calls." *Id*. Eventually, "the appraisal of the property

27  was ultimately submitted to Chase." *Id*.

28       On August 27, 2012, Mr. Lester "received a letter from Chase indicating that 'more time' was

UNITED STATES DISTRICT COURT
For the Northern District of California

1    needed to process the loan modification and that he would receive an update of the loan modification

2    by September 11, 2012." *Id.*

3        On August 28, 2012, CRC, again "as Trustee" under the Deed of Trust, recorded another notice

4    of default in the official records of San Mateo County which indicated that Mr. Lester was

5    $163,994.34 in arrears on his loan.  RJN, ECF No. 8-1, Exh. C.  Like the previously recorded notice,

6    the notice states, in relevant part, that "the present beneficiary under such Deed of Trust, has

7    executed and delivered to said Trustee [CRC], a written Declaration and Demand for Sale, and has

8    deposited with said duly appointed Trustee [CRC], such Deed of Trust and all documents evidencing

9    the obligations secured thereby, and has declared and does hereby declare all sums secured thereby

10   immediately due and payable and has elected and does hereby elect to cause the trust property to be

11   sold to satisfy the obligations secured thereby."  RJN, ECF No. 8-1, Exh. C.

12       On September 7, 2012, Mr. Lester "received a letter from Chase notifying him [again] that 'more

13   time' was required to process the loan modification."  Complaint, ECF No. 1 ¶ 65.  On September

14   12, 2012, he "received a letter from Chase in response to his correspondence dated July 18, 2012

15   sent to the Consumer Financial Protection Bureau and explaining that the delays in the loan

16   modification process was due to 'difficulties in getting an appraisal of the property.'" *Id.*

17       On September 12, 2012, Mr. Lester "received a Notice of Default." *Id.*  On September 14, 2012,

18   he "submitted to Chase additional information verifying income and other requested data in

19   connection with this fourth modification attempt." *Id.*  On September 20, 2012, Mr. Lester

20   "received a letter from Chase notifying him that after 2 reviews [he] was not eligible for a loan

21   modification." *Id.*

22       Mr. Lester alleges that, "as he was put in Chase's 'modification program,' was told by Chase

23   that he would not be put into foreclosure proceedings, but as [he was] in this ''program' Chase then

24   continuously asked [him] for the same documentation[,] prolonging [his] damages and causing [him]

25   to go further down the path of default instead of the promised path of loan modification." *Id.* ¶ 67.

26   In sum, during this arduous process, Mr. Lester alleges that he "was led to believe that if he provided

27   the requested documents, his loan would be permanently modified." *Id.* ¶ 69.  "But instead of

28   modifying [his] loan or at least attempting to modify it, Chase has simply put Plaintiff on the 'dual

C 12-05491 LB
ORDER

1   track' where, as Chase told [him] to modify his loan through Chase's modification programs, they

2   used this time to convince [him] to stop paying payments, force him into default without his

3   knowledge, and to use this default to foreclose on [his] home." *Id.*

4       Mr. Lester filed the instant complaint against Chase and WaMu on October 24, 2012.

5   Complaint, ECF No. 1.  He asserts the following so-called causes of action: (1) Temporary

6   Restraining Order; (2) Declaratory Relief; (3) Promissory Estoppel; (4) Breach of Implied Covenant

7   of Good Faith and Fair Dealing; (5) Deceit—Intentional Misrepresentation; (6) Fraud and

8   Deceit—Negligent Misrepresentation; (7) Deceit—Suppression of Material Facts; (8)

9   Deceit—Promise Made Without Intent to Perform; (9) Quiet Title to Real Property; (10)

10  Accounting; (11) Cancellation of Instruments; and (12) Violation of California Business and

11  Professions Code § 17200.  *Id.* ¶¶ 84-287.

12      Chase filed a motion to dismiss Mr. Lester's complaint on November 30, 2012.  Motion, ECF

13  No. 8.  Mr. Lester filed an opposition brief, and Chase filed a reply brief.  Opposition, ECF No. 11;

14  Reply, ECF No. 12.

**ANALYSIS**

16  **I. LEGAL STANDARD**

17      A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

18  not contain enough facts to state a claim to relief that is plausible on its face.  *See Bell Atlantic Corp.*

19  *v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

20  factual content that allows the court to draw the reasonable inference that the defendant is liable for

21  the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard

22  is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

23  defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557.).  "While a complaint

24  attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

25  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

26  conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual

27  allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S.

28  at 555 (internal citations and parentheticals omitted).

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1     In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

2   and construe them in the light most favorable to the plaintiff.  *See id*. at 550; *see also Erickson v.*

3   *Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir.

4   2007).

5     If the court dismisses the complaint, it should grant leave to amend even if no request to amend

6   is made "unless it determines that the pleading could not possibly be cured by the allegation of other

7   facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*

8   *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party

9   repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*

10   *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where

11   district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim

12   with leave to amend).

13   **II. DISCUSSION**

14     Mr. Lester's causes of action can be broken up into groups, based on the factual allegations

15   underlying them.  Accordingly, the court addresses Mr. Lester's causes of action in this way below.

16     **A. Mr. Lester's Causes of Action that Challenge Chase's Standing to Foreclose**

17     Mr. Lester's first, second, ninth, and eleventh causes of action are premised on the argument that

18   Chase has no standing to foreclose upon the Property.  *See* Complaint, ECF No. 1 ¶¶ 84-88, 89-108,

19   208-19, 224-30.  Chase argues that these causes of action must be dismissed because his "argument

20   that the securitization of the Note somehow divests WaMu of [its] interest as the lender under the

21   Deed of Trust" fails as he is "incorrect in his belief" that "WaMu no longer owned the beneficial

22   interest in the [P]roperty and that Chase could not have purchased it."  Motion, ECF No. 8 at 12; *see*

23   *id*. at 12-13.

24     The court cannot address this argument because it is confused about what Mr. Lester's theory

25   regarding the securitization of his loan actually is.  First, it appears that his theory is this: that his

26   loan was transferred to the WaMu 2007-HY7 Trust before the Trust's closing date of June 25, 2007,

27   and that this means the WaMu 2007-HY7 Trust owns his loan and that Chase could not have

28   purchased it from WaMu on September 25, 2008, and therefore Chase cannot foreclose.  *See id*. ¶¶

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

24, 25, 35, 95(6), 96; *see also Javaheri v. JPMorgan Chase Bank, N.A.*, No. CV10–08185 ODW (FFMx), 2011 WL 2173786, at *1-2, 5-6 (C.D. Cal. June 2, 2011) (plaintiff asserted a similar theory against Chase; court granted in part and denied in part Chase's and motion to dismiss); *Javaheri v. JPMorgan Chase Bank, N.A.*, No. CV10–08185 ODW (FFMx), 2012 WL 6140962, at *5-8 (Dec. 11, 2012) (court granted Chase's motion for summary judgment).[4]  This is the theory that seems to be most prevalent in Mr. Lester's complaint and which Chase addresses.  (It also appears to the theory that Mr. Lester highlighted in his opposition brief, *see* Opposition, ECF No. 11 at 2-3, 5, but for purposes of this motion the court must look to the allegations in the complaint.)  Second, however, it appears (as the court understands it) that he has another theory, which is not pled in the alternative: that his loan was <u>not</u> transferred to the WaMu 2007-HY7 Trust before the Trust's closing date (meaning the WaMu 2007-HY7 Trust does not own his loan), that the "securitization process failed" and the Assignment of Deed of Trust recorded on November 18, 2010 therefore is void, and so the Note has become separated from the Deed of Trust and Chase cannot foreclose.  *See id.* ¶¶ 31, 34, 43, 55, 95(1), 107, 108.[5]  Third, it appears that he has yet another theory: that Ms. Irby did not have authority to sign the Assignment of Deed of Trust which purported to transfer from Chase to "Bank of America, National Association successor by merger to LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-HY7 Trust all beneficial interest under" the Deed of Trust, and so Chase cannot foreclose.  *Id.* ¶¶ 26, 55, 95(4).

---

[4] It appears that Mr. Lester's theory also may have a twist.  He alleges that "[e]ven if [his] loan was an asset of the [WaMu 2007-HY7 Trust] . . ., it was not in default since according to [the pooling and service agreement that created the WaMu 2007-HY7 Trust] both the Servicer and Trustee have an obligation to make payments to the noteholders of the [WaMu 2007-HY7 Trust] in the event that the borrower has defaulted on payments."  Complaint, ECF No. 1 ¶ 42; *see id.* ¶¶ 49, 51, 102, 212, 213.  "Dispositively," Mr. Lester alleges, "the note is not actually 'in default' because insurance coverage protects these holders from realizing any loss or damages from the purported default being used to justify foreclosure here."  *Id.* ¶ 51.

[5] The court also is confused because of the seeming contradictions of his allegations.  For instance, in Paragraph 95 Mr. Lester alleges that his loan "is owned by the [WaMu 2007-HY7 Trust] and when Chase acquired assets of WaMu[, Chase] could not have acquired the security interest in the loan," but in Paragraph 97 he alleges that "if the loan is in the [WaMu 2007-HY7 Trust] then Chase does own Plaintiff's loan . . . ."  *Compare* Complaint, ECF No. 1 ¶ 95(1) *with* ¶ 97.

1  Without understanding Mr. Lester's allegations about the securitization of his loan, the court

2  cannot address Chase's argument that nothing about that securitization prevents it from having

3  standing to foreclose on the Property.[4]  So, for this reason alone, Mr. Lester's first, second, ninth,

4  and eleventh causes of action must be dismissed.

5  The question becomes, then, whether they should be dismissed with or without prejudice.  To

6  make this determination, the court finds it worthwhile to address Chase's other arguments.  First,

7  Chase argues that Mr. Lester asserts that Chase must physically "produce" or "possess" the Note to

8  foreclose on the Property.  Motion, ECF No. 8 at 14 (citing Complaint, ECF No. 1 ¶¶ 46-48. 50, 52).

9  While it is true that under California Civil Code § 2924(a)(1) no party needs to physically possess

10  the promissory note, *see Sicairos v. NDEX West, LLC*, No. 08cv2014-LAB (BLM), 2009 WL

11  385855, at *3 (S.D. Cal. Feb. 13, 2009), the court sees nothing in Mr. Lester's complaint that raises

12  the issue of <u>physical</u> possession of the Note.  *See generally* Complaint, ECF No. 1.

13  Second, Chase argues that Mr. Lester is precluded from challenging Chase's standing to

14  foreclose under *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149 (2011).  Motion,

15  ECF No. 8 at 15-16.  The court disagrees.  As Judge Chen has explained:

> *Gomes* held that California Civil Code § 2924(a)(1) does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized."  *Id.* at 1155, 121 Cal. Rptr. 3d 819.  But the issue in *Gomes* was not whether the wrong entity had initiated foreclosure; rather, the issue was whether the company selling the property in the nonjudicial foreclosure sale (MERS) was authorized to do so by the owner of the promissory note.  *See id.* at 1155, 121 Cal. Rptr. 3d 819 (rejecting the argument that a plaintiff may test whether the person initiating the foreclosure has the authority to do so; "[t]he recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures").  Notably, the *Gomes* court distinguished a case cited by

---

16  [4] Citing no authority, Chase also argues that Mr. Lester's theory—that he is not in default
because the "noteholders" of the WaMu 2007-HY7 Trust apparently still get paid regardless of
whether borrowers make their mortgage payments or not—fails as well.  Motion, ECF No. 8 at 13-
14.  And in his opposition Mr. Lester seems to disavow this theory anyway: "[Mr. Lester] does not
allege, as [Chase] suggests, that he does not have to repay the loan and any argument to that effect is
without merit."  Opposition, ECF No. 11 at 9.  This disavowal, however, seems to conflict with the
allegations the court quoted in Footnote 2, *supra*.  Regardless, given that the court dismisses Mr.
Lester's first, second, ninth, and eleventh causes of action because of the confusion surrounding his
theory or theories generally, the court considers Chase's argument on this issue to be moot.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    the plaintiff precisely because, in that case, "the plaintiff alleged wrongful foreclosure
     on the ground that assignments of the deed of trust had been improperly backdated,
2    and thus the wrong party had initiated the foreclosure process.  No such infirmity is
     alleged here."  *Id.*  Thus, *Gomes* explicitly avoided the scenario pled here, in which
3    "the plaintiff's complaint identified a specific factual basis for alleging that the
     foreclosure was not initiated by the correct party."  *Id.* at 1156.  *Gomes* is therefore
4    inapposite.

5    *Tamburri v. Suntrust Mortgage, Inc.*, No. C–11–2899 EMC, 2011 WL 6294472, *4 (N.D. Cal. Dec.

6    15, 2011) (footnote omitted); *see Naranjo v. SBMC Mortgage*, No. 11-cv-2229-L(WVG), 2012 WL

7    3030370, at *3 (S.D. Cal. July 24, 2012) (finding defendants' reliance on *Gomes* to be "misguided"

8    where plaintiff alleged "that the transfer of rights to the WAMU Trust is improper, thus Defendants

9    consequently lack the legal right to either collect on the debt or enforce the underlying security

10   interest").  Here, Mr. Lester does not simply seek to determine whether Chase is authorized to

11   foreclose; rather, he specifically alleges that it is not and provides a specific factual basis for so

12   alleging.  Accordingly, this court, too, finds that *Gomes* does not preclude Mr. Lester from

13   challenging Chase's standing to foreclose.

14      Third, Chase argues that Mr. Lester's first, second, ninth, eleventh, and twelfth causes of action

15   fail because he has not alleged that he is willing and able to tender the full amount that he owes.

16   Motion, ECF No. 8 at 16-18.  Generally, the "tender rule" applies to claims to set aside a trustee's

17   sale for procedural irregularities or alleged deficiencies in the sale notice.  *Robinson v. Bank of Am.*,

18   No. 12–CV–00494–RMW, 2012 WL 1932842, at *3 (N.D. Cal. May 29, 2012); *Tamburri*, 2011 WL

19   6294472, at *3.  "[T]he rationale behind the rule is that if plaintiffs could not have redeemed the

20   property had the sale procedures been proper, any irregularities in the sale did not result in damages

21   to the plaintiffs."  *Tamburri*, 2011 WL 6294472, at *3 (quoting *Cohn v. Bank of Am.*, No.

22   2:10–cv–00865 MCE KJN PS, 2011 WL 98840, at *9 (E.D. Cal. Jan. 12, 2011)).

23      The rule is not absolute, though.  Indeed, "[t]ender may not be required where it would be

24   inequitable to do so."  *See Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (Cal. Ct. App. 1997) (person

25   who purchased the plaintiff's property at the foreclosure sale was the plaintiff's own foreclosure

26   consultant who represented that he would assist the plaintiff in avoiding foreclosure).  In addition,

27   several federal courts sitting in California have held that the tender rule applies only in cases seeking

28   to set aside a completed sale, rather than an action to prevent a pending sale.  *See, e.g., Robinson*,

UNITED STATES DISTRICT COURT
For the Northern District of California

1  2012 WL 1932842, at *4; *Vissuet v. Indymac Mortgage Serv.*, No. 09–CV–2321–IEG (CAB), 2010

2  WL 1031013, at *2 (S.D. Cal. Mar. 19, 2010); *Giannini v. Am. Home Mortgage Servicing, Inc.*, No.

3  11–04489 TEH, 2012 WL 298254, at *3 (N.D. Cal. Feb. 1, 2012).  Moreover, tender is not required

4  where a plaintiff alleges a violation of California Civil Code § 2923.5, because, as one California

5  appellate court has stated, "[t]he whole point of section 2923.5 is to create a new, even if limited

6  right, to be contacted about the possibility of alternatives to full payment of arrearages.  It would be

7  contradictory to thwart the very operation of the statute if enforcement were predicated on full

8  tender." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 225 (Cal. Ct. App. 2010); *see Perez v.

9  Am. Home Mortgage Servicing, Inc.*, No. C 12–00932 WHA, 2012 WL 1413300, at *5 (N.D. Cal.

10  Apr. 23, 2012) ("Contrary to defendants' contention, a borrower need not tender the full amount of

11  indebtedness to be entitled to her rights under Section 2923.5."); *Valdez v. JPMorgan Chase Bank,

12  N.A.*, No. EDCV 11–0935 DOC (DTBx), 2012 WL 995278, at *5 n.5 (C.D. Cal. Mar. 20, 2012)

13  (citing *Mabry*); *Luciw v. Bank of Am., N.A.*,No. 5:10–cv–5969–JF (HRL), 2011 WL 1740114, at *2

14  (N.D. Cal. May 5, 2011).  Finally, where a plaintiff alleges that the entity lacked authority to

15  foreclose on the property, the foreclosure sale would be void. *See Dimock v. Emerald Properties

16  LLC*, 81 Cal. App. 4th 868, 876 (2000).  And "where a sale is void, rather than simply voidable,

17  tender is not required." *Tamburri*, 2011 WL 6294472, at *4 (citing Miller & Starr California Real

18  Estate 3d § 212); *see also Martinez v. Am.'s Wholesale Lender*, 446 F. App'x 940, 943 (9th Cir.

19  2011) ("The tender rule does not apply to a void, as opposed to a voidable, foreclosure sale."); 

20  *Dimock*, 81 Cal. App. 4th at 878.

21      Here, Mr. Lester asserts that Chase does not have authority to foreclose on the Property and,

22  thus, that any foreclosure sale would be void.  Accordingly, Mr. Lester does not need to allege

23  tender. *See Avila v. Wells Fargo Bank*, No. C 12–01237 WHA, 2012 WL 2953117, at *15 (N.D.

24  Cal. July 19, 2012) ("By alleging that the purported trustee, NDeX West, was not properly

25  substituted as trustee, had no interest in the subject property, and thus was not authorized to initiate a

26  non-judicial foreclosure when it recorded the notice of default, plaintiff alleges that the foreclosure

27  sale was void.  As such, the tender rule does not apply.") (internal citation omitted); *Vogan v. Wells

28  Fargo Bank*, No. 2:11-CV-02098-JAM-KJN, 2011 WL 5826016, at *7-8 (E.D. Cal. Nov. 17, 2011)

1   ("The Court holds that the tender requirement does not apply to this case because Plaintiffs are

2   challenging the beneficial interest held by U .S. Bank in the deed of trust, not the procedural

3   sufficiency of the foreclosure itself."); *see also In re Salazar*, 448 B.R. 814, 819 (S.D. Cal. 2011)

4   ("If U.S. Bank was not authorized to foreclose the [Deed of Trust] under Civil Code section 2932.5,

5   the foreclosure sale may be void, and Salazar would not need to tender the full amount of the Loan

6   to set aside the sale.").

7        Finally, Chase also attacks Mr. Lester's first, second, ninth, and eleventh causes of action

8   individually.  With respect to Mr. Lester's first cause of action for "Temporary Restraining Order,"

9   as Chase correctly points out, an injunction is a remedy, not a cause of action.  *See Marlin v. Aimco*

10  *Venezia, LLC*, 154 Cal. App. 4th 154, 162 (2007) ("A 'cause of action' must be distinguished from

11  the remedy sought. . . .  [T]he relief is not to be confounded with the cause of action, one not being

12  determinative of the other. An injunction is a remedy, not a cause of action." (citations omitted)); *see*

13  *also Gomez v. Wells Fargo Home Mortgage*, No. C 11–01725 LB, 2011 WL 5834949, at *13 (N.D.

14  Cal. Nov. 21, 2011) ("Injunctive relief, . . . 'is a remedy, not a cause of action, and thus it must be

15  tethered to some independent legal duty owed by the defendant.'") (quoting *Martone v. Burgess*, No.

16  C 08–2379 CW, 2008 WL 3916022, at *3 (N.D. Cal. Aug.25, 2008)); *Ayala v. Bank of Am.*, No.

17  09CV 1946, 2010 WL 1568577, at *4 (S.D. Cal. Apr.16, 2010).  Mr. Lester states in his opposition

18  brief that his cause of action "is a separate and independent cause of action based on the facts of this

19  case," but he cites no authority in support of this statement, and the statement clearly conflicts with

20  the authority cited above by the court.  Accordingly, Mr. Lester's first "cause of action" is

21  **DISMISSED WITH PREJUDICE**.[5]

22       With respect to Mr. Lester's second cause of action for "Declaratory Judgment," Chase argues

23  that it fails because Mr. Lester fails to allege that he is willing and able to tender the amount he owes

24  and because California law does not require physical possession of the Note.  Motion, ECF No. 8 at

25  20-21.  As stated above, the court finds that tender is not required here and that Mr. Lester does not

26  _____

27       [5] The court notes that it is not ruling on whether Mr. Lester is entitled to injunctive relief;
    rather it is ruling only that his request for injunctive relief is not properly asserted as a "cause of
28  action."

UNITED STATES DISTRICT COURT
For the Northern District of California

1   appear to be asserting that Chase must have physical possession of the Note.  Thus, Mr. Lester's

2   second cause of action is **DISMISSED WITHOUT PREJUDICE**.

3       With respect to Mr. Lester's ninth cause of action for "Quiet Title," Chase argues that it fails

4   because (1) he has not alleged that he is willing and able to tender the amount he owes, (2)

5   securitization does not affect Chase's power of sale, and (3) he has not identified which Defendant

6   asserts an adverse claim to the title.  Motion, ECF No. 8 at 23-24.[6]  Under California law, a cause of

7   action for quiet title must be in a verified complaint and include: (1) a description of the property

8   that is the subject of the action, (2) the title of the plaintiff as to which a determination is sought and

9   the basis of the title, (3) the adverse claims to the title of the plaintiff against which a determination

10  is sought, (4) the date as of which the determination is sought, and (5) a prayer for the determination

11  of the title of the plaintiff against the adverse claims.  *See* Cal. Code Civ. Pro. § 761.020; *Hamilton*

12  *v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1177–78 (E.D. Cal. 2010); *Rosenfeld v. JPMorgan*

13  *Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975–76 (N.D. Cal. 2010); *Ferguson v. Avelo Mortgage,*

14  *LLC*, 126 Cal. Rptr. 3d 586, 591 (2011).  A review of Mr. Lester's allegations show that he has met

15  these basic pleading requirements.  *See* Complaint, ECF No. 1 ¶¶ 208-19.

16      In most circumstances, however, a requirement of an action to quiet title is an allegation that

17  plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under

18  the deed of trust."  *Kelley v. Mortgage Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D.

19  Cal. 2009).  "Thus, it [normally] is dispositive as to this claim that, under California law, a borrower

20  may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the

21  property."  *Rosenfeld*, 732 F. Supp. 2d at 975 (N.D. Cal. 2010) (citing *Miller v. Provost*, 26 Cal.

22  App. 4th 1703, 1707 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his

23  title against the mortgagee") (citation omitted)).  But here, as explained above, Mr. Lester does not

24  need to allege tender because he alleges that Chase does not have authority to foreclose on the

25

26      [6] Citing *Leeper v. Beltrami*, 53 Cal. 2d 195 (1959), Chase argues that quiet title is a remedy

27  and not a cause of action.  Motion, ECF No. 8 at 24.  *Leeper*, which discusses which statute of
    limitations to apply when a plaintiff brings an action alleging fraud and to quiet title, does not state

28  that quiet title cannot be a separate cause of action.  *See Leeper*, 53 Cal. 2d at 212-217.

Property and, thus, that any foreclosure sale would be void. *See Tamburri*, 2011 WL 6294472, at *4; *Dimock*, 81 Cal. App. 4th at 878. Mr. Lester's quiet title cause of action, then, does not fail for lack of tender. *See Montgomery Nat'l City Mortgage*, No. C–12–1359 EMC, 2012 WL 1965601, at *12 (N.D. Cal. May 31, 2012) (plaintiff's quiet title cause of action did not fail for the lack of a tender allegation where it was based on the allegations that, because of "National's securitization of the loan," "none of the defendants is a holder of the Note, none of them can prove any interest in the Note, and none of them can prove that the Note is secured by the deed of trust"). Accordingly, Mr. Lester's ninth cause of action is **DISMISSED WITHOUT PREJUDICE**.

And with respect to Mr. Lester's eleventh cause of action for "Cancellation of Instruments," Chase argues that it fails because, contrary to Mr. Lester's allegations, the securitization of his loan "had no bearing on Chase's purchase of WaMu's interest on the loan." Motion, ECF No. 8 at 26. California Civil Code § 3412 provides that court-ordered cancellation of a written instrument is appropriate if "there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable . . . ." Cal. Civ. Code § 3412. As described above, it appears that at least one of Mr. Lester's theories is that Chase did not purchase his loan from WaMu and so Chase has no interest in the deed of trust and the notices of default and notices of trustee's sale that were recorded in the official records of San Mateo County should be cancelled. As such, assuming that this is his theory, Mr. Lester has sufficiently alleged that these documents are void or voidable. His eleventh cause of action is **DISMISSED WITHOUT PREJUDICE**.

**B. Mr. Lester's Causes of Action that Relate to the Modification of His Loan**

Mr. Lester's third, fourth, fifth, sixth, seventh, and eighth causes of action all relate to his allegations concerning his attempts to have his loan modified. *See* Complaint, ECF No. 1 ¶¶ 109-21, 122-35, 136-58, 159-77, 178-94, 195-207. Chase argues that these causes of action fail for several reasons.

First, Chase argues that Mr. Lester's third cause of action for promissory estoppel fails because (1) he is not willing and able to tender the amount he owes and (2) he does not sufficiently allege a promise. Motion, ECF No. 8 at 21-22. As for Chase's first argument, the court already determined that Mr. Lester does not need to allege tender. As for Chase's second argument, under California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *See Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000). Promissory estoppel is an equitable doctrine whose remedy may be limited "as justice so requires." *See id.* The elements of promissory estoppel are: "(1) a clear promise; (2) reasonable reliance; (3) substantial detriment; and (4) damages 'measured by the extent of the obligation assumed and not performed.'" *See Errico v. Pacific Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1048 (N.D. Cal. 2010) (citing and quoting *Poway Royal Mobilehome Owners Ass'n. v. City of Poway*, 149 Cal. App. 4th 1460, 1470 (2007)).

To support his claim, Mr. Lester relies upon his allegations describing his efforts to get a loan modification. *See* Complaint, ECF No. 1 ¶¶ 62-83, 109-21. The gist of the claim is that Chase told him that it would consider him for a loan modification and would not foreclose on the Property during this time, but then he never received one even though he complied with all of Chase's requirements, and foreclosure proceedings were instituted. But Chase is right that Mr. Lester does not identify a "clear promise" made to him. For one, the court cannot tell whether the purported promise was that he would receive a loan modification or if it was that foreclosure proceedings would not be instituted, or both. In addition, the court cannot identify when or how such a promise was made. For instance, is it based on Chase's alleged representation that he "was told by Chase representatives that they could not modify his loan unless he was behind [on his] payments"? *See id.* ¶ 65. Is it based on the terms of the trial modification that he apparently entered into? *See id.* Is it based on other conversations he had with Chase personnel during the time he was discussing his loan modification applications? *See id.* On the Chase's "ad" regarding loan modifications? *See id.* ¶ 79. The court simply does not know. Because Mr. Lester does not identify a "clear promise," his third cause of action is **DISMISSED WITHOUT PREJUDICE**. *See Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890-91 (1976) (affirming dismissal of promissory estoppel claim where the alleged "promise" was not "clear and unambiguous").

Second, Chase argues that Mr. Lester's fourth cause of action for breach of implied covenant of good faith and fair dealing fails because he does not identify a contract to which he is a party or a

UNITED STATES DISTRICT COURT
For the Northern District of California

1    provision that Chase breached.  Motion, ECF No. 8 at 22-23.  The covenant of good faith and fair

2    dealing is implied in every contract and prevents one party from "unfairly frustrating the other

3    party's right to receive the benefits" of the contract.  *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317,

4    349 (2000).  To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff

5    must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the

6    plaintiff did all or substantially all of the things that the contract require him to do or that he was

7    excused from having to do; (3) all conditions required for the defendant's performance had occurred;

8    (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract;

9    and (5) the defendant's conduct harmed the plaintiff.  *See* Judicial Counsel of California Civil Jury

10   Instructions § 325 (2011); *see also Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-01686

11   SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007).

12       "Under California law, a claim for breach of the [implied covenant of good faith and fair

13   dealing] is necessarily based on the existence of an underlying contractual relationship.  The essence

14   of the covenant is that no party to the contract will do anything which would deprive the others of

15   the benefits of the contract."  *Wolf v. Wells Fargo Bank, N.A.*, No. C11–01337 WHA, 2011 WL

16   4831208 at *4 (N.D. Cal. Oct. 12, 2011) (citing *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th

17   784, 799 (2008)).  To establish a breach of the covenant, then, a plaintiff must establish the existence

18   of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from

19   that contract.  *Id.*

20       Like with Mr. Lester's promissory estoppel claim, his breach of the covenant of good faith and

21   fair dealing claim fails because it is unclear what the contract is.  It is true that he alleges that he

22   "entered into a trial payment plan agreement with [Chase] in June 2010" and "was told that [] if

23   partial payments were made[,] a permanent modification based on the terms offered would be made

24   and that [Chase] would not foreclose on the [P]roperty," Complaint, ECF No. 1 ¶ 124, but he never

25   alleges the specific terms of this agreement or in what form this agreement took (e.g., oral, written?).

26   Moreover, he alleges that he entered into this agreement in June 2010, but his earlier allegation in

27   Paragraph 65 of his complaint suggests that he was already "in the middle of a 'Trial Period Plan'"

28   at that time.  Given this confusion, the court believes the best course of action is to dismiss Mr.

1   Lester's claim and grant him leave to clarify it.  Accordingly, the court **DISMISSES WITHOUT**

2   **PREJUDICE** Mr. Lester's fourth cause of action.

3          Third, Chase argues that Mr. Lester's fifth, sixth, seventh, and eighth causes of action fail

4   because (1) he fails to meet the heightened pleading standards under Federal Rule of Civil Procedure

5   9(b) and (2) he does not allege any misrepresentations.  Motion, ECF No. 8 at 18-20.  "A cause of

6   action for fraud [under California law] requires the plaintiff to prove (a) a knowingly false

7   misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the

8   plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages."  *Glenn K. Jackson Inc.*

9   *v. Roe*, 273 F.3d 1192 (9th Cir. 2001) (quoting *Wilkins v. Nat'l Broadcasting Co., Inc.*, 71 Cal. App.

10  4th 1066, 1082 (1999)); *see also* Cal. Civ. Code § 1572.  Moreover, claims alleging fraud are subject

11  to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Vess v.*

12  *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (if "the claim is said to be

13  'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy

14  the particularity requirement of Rule 9(b)"); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994)

15  (claims based in fraud "must state precisely the time, place, and nature of the misleading statements,

16  misrepresentations, and specific acts of fraud").

17         The court agrees with Chase that Mr. Lester's allegations are unclear (despite being

18  voluminous).  For example, in Paragraph 137, Mr. Lester alleges that Chase represented that (1) the

19  Note "would be placed in the loan modification program," (2) "he should stop making his mortgage

20  payments in order for Defendants to qualify him for loan modification," and (3) "[u]ntil the loan

21  modification review process was completed a Trustee's Sale would not be conducted on the

22  Property."  Complaint, ECF No. 1 ¶ 137.  He then alleges that these representations were false

23  because (1) "no adequate review of the loan modification process was in progress," (2) "Defendants

24  did not intend to proceed with a loan modification refinance," (3) "Defendants intended to proceed

25  with foreclosure on the [P]roperty," and (4) "foreclosure processes were ongoing as [he] was now in

26  default even though [he] followed the instructions of Defendants."  *Id.* ¶ 138.  These allegations are

27  unclear for several reasons.  First, it is unclear whether "placed in the loan modification program"

28  means that Chase would give him a trial loan modification, that Chase would give him a permanent

1   loan modification, or that Chase would simply review his loan modification application.  Second, it

2   is unclear because in Paragraph 65 he alleges that "Chase representatives" told him "that they could

3   not modify his loan unless he was behind [on his] payments," but in Paragraph 137 he alleges that

4   Chase representatives told him that "he should stop making his mortgage payments."  *Compare id*. ¶

5   65 *with* ¶ 137.  These are different allegations about the same event.  Third, although Paragraph 138

6   alleges that "no adequate review of the loan modification process was in progress," Paragraph 73

7   alleges that "Defendants never actually considered modification of [his] loan."  *Compare id*. ¶ 73

8   *with* ¶ 138.  Is Mr. Lester alleging that Chase reviewed his loan modification application but did not

9   do so adequately, or that Chase did not ever even review his application?  Fourth, in several

10  paragraphs Mr. Lester alleges only that "Defendants" made certain misrepresentations.  *See*, *e.g.*, *id*.

11  ¶¶ 73, 76, 138.

12      In short, the court is unclear what, exactly, Mr. Lester alleges Chase represented to him or why,

13  exactly, those representations were false or misleading.  Accordingly, Mr. Lester's fifth, sixth,

14  seventh, and eighth causes of action are **DISMISSED WITHOUT PREJUDICE**.

15      **C.  Mr. Lester's Two Other Causes of Action**

16      Mr. Lester alleges two other causes of action, and they do not fit into the two groups above.

17  With respect to Mr. Lester's tenth cause of action for "Accounting," *see* Complaint, ECF No. 1 ¶¶

18  220-23, Chase argues that it fails because no fiduciary duty exists between it and Mr. Lester and

19  because any accounting would not be complicated, Motion, ECF No. 8 at 24-25.  Accounting is an

20  independent cause of action in equity.  *Penney v. Wells Fargo Bank, NA*, No. 2:11–cv–05567–ODW

21  (MANx), 2012 WL 2071705, at *13 (C.D. Cal. June 8, 2012) (citing *Teselle v. McLoughlin*, 173

22  Cal. App. 4th 156, 180 (2009)).  "A cause of action for an accounting requires a showing that a

23  relationship exists between the plaintiff and defendant that requires an accounting, and that some

24  balance is due the plaintiff that can only be ascertained by an accounting." *Teselle*, 173 Cal. App.

25  4th at 179 (citing *Brea v. McGlashan*, 3 Cal. App. 2d 454, 460 (1934)); *see Mendoza v. Countrywide

26  Home Loans*, Inc., No. C-09-3648 SC, 2009 WL 4706350, at *8 (N.D. Cal. Dec. 3, 2009). No

27  fiduciary relationship is required.  *Teselle*, 173 Cal. App. 4th at 179; *see Shkolnikov v. JPMorgan

28  Chase Bank*, No. 12–03996 JCS, 2012 WL 6553988, at *23 (N.D. Cal. Dec. 14, 2012).  But "[a]n

UNITED STATES DISTRICT COURT
For the Northern District of California

1    action for accounting is not available where the plaintiff alleges the right to recover a sum certain or

2    a sum that can be made certain by calculation." *Penney*, 2012 WL 2071705, at *13 (citing *Teselle*,

3    173 Cal. App. 4th at 179).

4          Here, Mr. Lester alleges that he "received a Notice of Default for arrearages that included

5    undisclosed fees and costs associated with the foreclosure proceedings and fees for forced placed

6    insurance at a time [when he] maintained homeowner's insurance" and that determining the amount

7    of these fees and costs "is so complicated that an accounting is necessary to determine the sum

8    certain charged back to the mortgage after Defendants rescinded the forced place insurance."

9    Complaint, ECF No. 1 ¶¶ 221-22.  Chase says that "[a]ll that would need to be done to determine the

10   sum certain would be to determine the period that [Mr. Lester] had his own insurance, and see what

11   insurance premiums were charged to his account during that time," Motion, ECF No. 8 at 17, but

12   given the difficulties Mr. Lester has had in receiving timely and clear information from Chase, the

13   court finds Mr. Lester's allegations to be sufficient.  His tenth cause of action **SURVIVES**.

14         Mr. Lester's twelfth cause of action is for violation of California's Unfair Competition Law, Cal.

15   Bus. & Prof. Code § 17200 *et seq*.  *See* Complaint, ECF No. 1 ¶¶ 231-287.  From what the court can

16   tell, it appears to be based on several theories: first, Mr. Lester alleges simply that "Defendants"

17   "implement[ed] and perpetrat[ed] [a] fraudulent scheme [to] induc[e] [Mr. Lester] to accept

18   mortgages based on inflated property valuations and [an]  undisclosed disregard of their own

19   underwriting standards and [then] sell[ing] [] overpriced collateralized mortgage pools" (*see id*. ¶

20   233); second, he alleges that "Defendants" disclosed some unspecified private information of his in

21   violation of his privacy rights under the California Constitution (*see id*. ¶¶ 234-48); third, that

22   "Defendants" did not diligently try to contact him before recording a notice of default, in violation

23   of California Civil Code § 2923.5 (*see id*. ¶ 249); fourth, that "Defendants" lacked standing to

24   foreclose (*see id*. ¶ 249); and fifth, that "Defendants" fraudulently misrepresented that he would

25   receive a loan modification (*see id*. ¶¶ 281-82).

26         None of these bases, as alleged, are sufficient to support Mr. Lester's Unfair Competition Law

27   claim.  His first theory is conclusory and not supported by factual allegations.  His second theory is

28   insufficient because he does not allege, specifically, what private information was shared and how,

C 12-05491 LB
ORDER

exactly, its sharing was unlawful.  His third theory, while possible, is unsupported.  Nowhere else in the entire complaint does Mr. Lester allege anything about not being contacted in violation of California Civil Code § 2923.5 or about why his other contact with Chase representatives do not satisfy this requirement.  And he court already determined, with respect to his first, second, ninth, and eleventh causes of action, that his fourth theory, as alleged, is unclear.  Likewise, the court already determined, with respect to his third, fourth, fifth, sixth, seventh, and eighth causes of action, that his fifth theory is unclear.  Accordingly, Mr. Lester's twelfth cause of action is **DISMISSED WITHOUT PREJUDICE**.

### CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Chase's motion. The court **DISMISSES WITH PREJUDICE** Mr. Lester's first cause of action for "Temporary Restraining Order" and **DISMISSES WITHOUT PREJUDICE** his second, third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, and twelfth causes of action.  Mr. Lester's tenth cause of action **SURVIVES**.  Mr. Lester shall have until March 28, 2013 to file a First Amended Complaint.

**IT IS SO ORDERED.**

Dated: February 20, 2013

_____
LAUREL BEELER
United States Magistrate Judge