**BRYAN CAVE LLP**
C. Scott Greene, California Bar No. 277445
Daniel T. Rockey, California Bar No. 178604
Thomas Lee, California Bar No. 275706
560 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (415) 675-3400
Facsimile: (415) 675-3434
Email: scott.greene@bryancave.com
daniel.rockey@bryancave.com
tom.lee@bryancave.com

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK LESTER,<br><br>    Plaintiff,<br><br>  v.<br><br>J.P. MORGAN CHASE BANK, N.A.; a New York corporation; WASHINGTON MUTUAL BANK, a Seattle Corporation; and DOES 1-50 inclusive, and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's' title, or any cloud on Plaintiff's' title thereto, named as DOES 51-100, inclusive,<br><br>    Defendants. | Case No. 3:12-CV-05491-LB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 9(b), and 12(B)(6)**<br><br>Date: June 20, 2013<br>Time: 11 a.m.<br>Courtroom: C, 15th Floor<br><br>The Honorable Laurel Beeler<br><br>Date Action Filed: October 24, 2012<br>Trial Date: Not Set |

# DEFENDANT'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

## I. INTRODUCTION

Mark Lester's ("Plaintiff") Opposition to JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss (the "Motion") portions of the First Amended Compliant ("FAC") does not remedy the deficient allegations in Plaintiff's FAC, and does nothing to dispute Chase's contention that the FAC should be dismissed without leave to amend.

The twenty five page Opposition appears to state that Plaintiff's claims are based on two arguments:

1) That California Reconveyance Company ("CRC") and Chase have no interest in the property under the Deed of Trust ("DOT") because the interest in the Note was assigned to the trust pool when the loan was securitized, so WaMu – the lender - no longer had any interest in the loan under the Deed of Trust to assign to Chase. Based on this, CRC and Chase do not have the right to initiate foreclosure proceedings and collect mortgage payments.

2) That Chase owed him a fiduciary duty, that Chase owed him a general duty, and that Chase was required to provide Plaintiff with a permanent modification if he complied with the terms of the Trial Payment Plan.

Both of these arguments fail, and Plaintiff's Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh and Twelfth Causes of Action should be dismissed without leave to amend because Plaintiff fails to allege any facts sufficient to state a claim against Chase despite having a very lengthy and thoughtful ruling from the Court detailing the defects in his original complaint.

## II. ARGUMENT

### A. All Of Plaintiff's Securitization Based Claims Fail Because CRC Recorded The NOD, Not Chase, And Chase Acted As The Loan's Servicer

Plaintiff's securitization argument is nothing more than an elaborate and long winded red herring. As articulated in the Opposition, Plaintiff's position appears to be that when the loan was securitized in 2007, WaMu lost its beneficial interest in the loan because that interest was transferred to the Trust and therefore WaMu had no beneficial interest left to convey to Chase in

2008. (Opposition pgs. 2-5). Plaintiff also contends that CRC – the trustee under the DOT - "lost any right to collect money on the Note and/or to foreclose because the Note and DOT were securitized." (Opposition pg. 2:8-10). Based on these allegations, Plaintiff concludes that neither Chase or CRC could not initiate foreclosure proceedings because they are not the beneficiary under the DOT, and that neither Chase or CRC has the right to collect payments under the loan. (Opposition pgs. 2-12).

### 1. CRC Recorded the NOD And Had The Right To Do So As The Trustee Under The DOT

As a preliminary matter, Plaintiff's Opposition does not deny that he is in default on his loan, and that foreclosure initiated by some party is proper. Instead he appears to argue that the NOD recorded on August 28, 2012, is void because Chase did not have a beneficial interest in the loan and could not, therefore, initiate foreclosure proceedings. Plaintiff's argument fails for several reasons. First, Chase did not issue, record, or request that the Notice of Default be recorded. (Request for Judicial Notice in Support of Defendant's Motion to Dismiss ("RJN"), Ex. E). The NOD was recorded by CRC after it received "a written Declaration and Demand for Sale" from "the present beneficiary" under the DOT. (*Id.* at pg. 2). Nowhere on the NOD does it state that Chase is purporting to be the beneficiary, nor is Chase acting as the Trustee. Therefore, all of Plaintiff's claims against Chase fail to the extent that Plaintiff's claims are based on the allegation that Chase has improperly initiated foreclosure proceedings since the NOD was clearly recorded by CRC – not Chase – at the instruction of the current beneficiary. (*Id.*)

CRC is currently not a named party in this suit, but even if Plaintiff sought leave to amend to add CRC, his claim would fail. Plaintiff does not dispute that CRC was named as the Trustee under the DOT. (Opposition pg. 2:8). Instead, Plaintiff argues that through the process of securitization, CRC lost its standing as trustee because the DOT flowed with the Note into the Trust. As discussed at length in Defendant's Motion, "the argument that parties lose their interest in a loan when it is assigned to a trust pool or REMIC has been rejected by numerous courts." *Logvinov v. Wels Fargo Bank*, 2011 WL 6140995, at *3 (N.D.Cal. 2011); *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009)(finding that the parties to a

1  deed of trust do not lose their power of sale when the original promissory note is assigned to a
2  trust pool); *Bascos v. Federal Home Loan Mortg. Corp.* (C.D. Cal. 2011) 2011 WL 3157063, 6.);
3  *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010).; *Wadha v.
4  Aurora Loan Servs., LLC*, 2011 WL 2681483, at *4 (E.D.Cal. 2011). "Securitization merely
5  creates a separate contract, distinct from plaintiffs' debt obligations under the note, and does not
6  change the relationship of the parties in any way." *Logvinov*, 2011 WL 6140995, at *3 (*citing*
7  *Reyes v. GMAC Mortgage LLC*, 2011 WL 1322775, at *2 (D.Nev. 2011)(internal quotations
8  omitted).

9     Because securitization does not change the relationship of the parties created by the DOT,
10 CRC remained the Trustee even after the loan was securitized.  Therefore, CRC properly acted as
11 the Trustee when it recorded the NOD at the request of the current beneficiary.

12    Plaintiff's attempt to distinguish or discredit this well established line of cases is inaccurate
13 and unpersuasive.  Plaintiff's Opposition states that "*Hafiz* did not hold that the original parties to
14 a deed of trust [maintain] their power of sale when the … promissory note is assigned to a trust
15 pool." (Opposition at pg. 11:11-12).  The case states that "*Hafiz*'s request for declaratory relief is
16 based on the erroneous theory that all defendants lost their power of sale pursuant to the deed of
17 trust when the original promissory note was assigned to the trust pool." *Hafiz*, 652 F. Supp. 2d at
18 1043.  Clearly *Hafiz* does explicitly stand for the proposition that the parties to a deed of trust
19 maintain their power of sale even after the loan is securitized.  *Hafiz* goes on to state that the
20 undisputed trustee under the deed of trust – in this case CRC – "has the power and the duty to
21 initiate foreclosure proceedings on the property upon the trustor's default, resulting in a sale of the
22 property." *Id.*  Plaintiff's attempt to distinguish this recognized line of cases fails, and his
23 argument that CRC was somehow stripped of its role as the Trustee also fails, so this Court should
24 not allow Plaintiff to amend his compliant to add any claims against CRC.

25    Plaintiff's allegations against Chase based on the foreclosure fail because he has not, and
26 cannot, allege that Chase initiated the foreclosure proceedings against, him.  Chase did not record
27 the Notice of Default, and has not purported to be the beneficiary under the DOT.
28

### 2. Chase Acted As The Loan's Servicer

Throughout the FAC Plaintiff discusses at length the activities of Chase in relation to his loan. He claims that Chase collected mortgage payments from him, discussed a loan modification and foreclosure avoidance options with him, and placed insurance on his property when is own insurance coverage lapsed. (*See* FAC). Plaintiff alleges that all of these activities were wrongful because "Chase never acquired the Note/DOT from Wamu." (FAC ¶ 26). What Plaintiff has described are the activities of a loan servicer – an organization that acts on behalf of the beneficiary to collect loan payments and to work with the borrower in the event that a modification is requested. Plaintiff has not alleged how the loan's securitization prevents Chase from acting as the loan's servicer.

In fact, the DOT specifically notified Plaintiff that subsequent sales of the Note "might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument and Applicable Law." (RJN, Ex. A, pg. 12). Plaintiff does not dispute that he was given notice that Chase became the servicer and that he was required to send payments to them, in fact, that is one of his recurring allegations in the FAC.

Plaintiff's allegation that Chase was not allowed to collect his loan payments because it was not the owner of the Note or DOT is an attempt to obfuscate the simple fact that Chase was acting as the loan's servicer, and therefore did not act improperly.

All of Plaintiff's claims based on the securitization of the loan fail because CRC – not Chase - properly acted as the Trustee under the DOT when it recorded the NOD at the request of the current beneficiary, and because Chase acted as the loan's servicer, and does not purport to be the beneficiary of the DOT.

### 3. Plaintiff's Homeowners' Bill Of Rights Allegations Misstate The Law

Perhaps in recognition of the factual deficiencies in his allegations, Plaintiff attempts to manipulate the newly passed Homeowners' Bill of Rights ("HOBR") to create a retroactive obligation that all parties who have initiated foreclosure proceedings in California – even prior to the statute's effective date – must affirmatively demonstrate that as of January 1, 2013, they have a

1  beneficial interest in the note or authorization from the beneficiary. (Opposition at pgs. 8-11).

2  First, Plaintiff misconstrues the requirements of Civil Code § 2924(a)(6) when he says that
3  it "requires an entity continuing a foreclosure after January 1, 2013 to first **affirmatively prove**
4  standing to take such action." (Opposition at pg. 8:21-23)(emphasis supplied). § 2924(a)(6) does
5  not require the party initiating foreclosure to affirmatively prove their standing, all that it does is
6  codify the requirement that the foreclosing party actually be the beneficiary, trustee, or an
7  authorized agent. Plaintiff's attempt to read in a duty to make some affirmative showing of these
8  facts prior to initiating foreclosure proceedings is not supported by the language of the statute, and
9  fails.

10  Second, Plaintiff attempts to expand the statute's applicable time period. Nothing in the
11 HOBR states that it is to be applied retroactively and there is no indication, let alone a clear one,
12 that the Legislature intended that these statutes be applied retroactively. As the court held in
13 *People v. Whaley*, 160 Cal. App. 4th 779, 793-94 (2008): "The rules of statutory construction
14 require us to consider legislation as being 'addressed to the future, not to the past.' It is well
15 settled that a new statute is presumed to operate prospectively absent an express declaration of
16 retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise."
17 (Emphasis added). *See also, Elsner v. Uveges*, 34 Cal. 4th 915, 938-939 (2004) (absent a clear
18 statement of intent in the statute to indicate that it be given retroactive application, a statute will
19 not be given retroactive application); *Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1208-09
20 (1988) ("A basic canon of statutory interpretation is that statutes do not operate retrospectively
21 unless the Legislature plainly intended them to do so. The Legislature, of course, is well
22 acquainted with this fundamental rule, and when it intends a statute to operate retroactively it uses
23 clear language to accomplish that purpose.") (emphasis added).

24  Moreover, federal cases have echoed this reasoning, finding that "the amendments do not
25 go into effect until Jan. 1, 2013 and there is no indication that the law is intended to be, or will be,
26 applied retroactively." *McGough v. Wells Fargo Bank, N.A*., 2012 U.S. Dist. LEXIS 151737, at
27 *16-17 (N.D. Cal. 2012); *Guglielmelli v. Wells Fargo Bank, N.A*., 2013 U.S. Dist. LEXIS 43063,
28 at *10 (C.D. Cal. March 26, 2013) ("There is no authority stating that these provisions of the

Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105

HBOR are to be applied retroactively."); *Michael J. Weber Living Trust v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 41797, at *11 (N.D. Cal. 2013) (the Homeowner Bill of Rights "does not state that it has retroactive effect").

Rather than accept that the statute does not apply retroactively, Plaintiff argues that "modern Civil Code § 2924(a)(6) must be broadly construed to require proof of standing before allowing any foreclosures to <u>continue</u> after January 1, 2013." (Opposition at pg. 11:7-9). Once again, § 2924(a)(6) does not require the foreclosing party to demonstrate "proof of standing." Next, Plaintiff's argument attempts to expand the statute to require this demonstration of proof for all notices of default recorded before January 1, 2013, which have not resulted in a trustee's sale. Plaintiff's argument is nothing more than a creative attempt to apply the statute retroactively, and therefore fails.

Finally, Plaintiff cannot allege that Chase has not complied with the HOBR because Chase has not proceeded with the foreclosure since January 1, 2013. Plaintiff has not alleged that Chase has recorded a Notice of Trustee's Sale, or any other foreclosure related documents since January 1, 2013, so he cannot state any HOBR claims.

Plaintiff's allegations concerning the HOBR are yet another red herring designed to confuse the simple facts of this case: Chase properly acted as the loan's servicer, and CRC properly recorded the NOD as the Trustee.

B. **Each Of Plaintiff's Wrongful Foreclosure Causes of Action Fails For Independent Reasons**

1. **Plaintiff Does Not Dispute That He Has Not Alleged A Claim for Declaratory Relief**

Plaintiff does not dispute that his second cause of action for Declaratory Relief fails because no actual controversy exists. In his Opposition Plaintiff raises various arguments concerning the "foreclosure fraud," but does not dispute that these allegations fail to form the basis of a claim for declaratory relief. The Second cause of action for declaratory relief should be dismissed without leave to amend because Plaintiff does not dispute that it is not distinct from Plaintiff's other claims, and because Plaintiff's arguments are legally flawed.

### 2. Plaintiff's Ninth Cause Of Action For Quiet Title Fails Because He Does Not Dispute That He Has Not Identify An Adverse Claim, And Chase Did Not Initiate Foreclosure Proceedings

Plaintiff does not dispute that his ninth cause of action fails because he does not identify which defendants "assert an adverse claim" to the Property, and instead, simply realleges his theory that "[d]efendants assert adverse claims." (FAC ¶ 110). *Cf.* Cal. Code Civ. Proc. § 762.010; *Metcalf v. Drexel Lending Group*, 2008 U.S. Dist. LEXIS 87420 *14 (S.D. Cal. 2008) (noting that where there are multiple defendants, plaintiff must allege which defendant asserts an adverse claim to the property). Assuming that Plaintiff intends to quiet title against Chase, his claim fails because Chase did not record the NOD, it was not recorded on Chase's behalf, and Chase has therefore not alleged any claim to title.

Next, Plaintiff also does not dispute that his claim fails because he does not identify any competing claim to title. *Cf.* Cal. Code Civ. Proc. § 762.010. The properly recorded Notice of Default does not affect Plaintiff's title (*Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1168 (S.D. Cal. 2009)) and, the title to the Property remains in Plaintiff's name.

Plaintiff's Ninth cause of action for quiet title should be dismissed without leave to amend because it is not specifically plead against any defendant, and because Chase has not made an adverse claim to title.

### 3. Plaintiff's Eleventh Cause of Action For Cancellation of Instrument Fails Because He Has Not Alleged Serious Injury As A Result Of The Assignment, And The NOD Was Proper

Cancellation of instruments is appropriate when there is "[a] written instrument, in respect to which there is reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable." Cal. Civ. Code § 3412. The Plaintiff must also allege the "apparent validity" and "actual invalidity" of the instrument and an apprehension of serious injury. Cal. Civ. Code § 3413; Hughes, 85 Cal.App. at 316.

Plaintiff's Eleventh cause of action for cancellation of instruments argues that the "assignment(s) of the Note and DOT, NODs and NOTS" must be cancelled. (FAC ¶ 117). The

1  only two relevant recorded documents are the Assignment and the August 28, 2012, NOD. With
2  respect to the assignment, Plaintiff has not, and cannot, allege any apprehension of serious injury
3  as required to state a claim, because even if Chase did not have the authority to transfer the
4  beneficial interest, that transfer in no way effects Plaintiff. The only person who would have a
5  claim for cancellation of instrument would be the actual beneficiary because that party would be
6  harmed, not Plaintiff.

7  Next, as discussed throughout this Reply and the Motion, the NOD was properly recorded
8  by CRC, not Chase, at the request of the loan's beneficiary. Plaintiff has not alleged any fraud or
9  deceit in the recordation of the NOD, and his claim for cancellation fails.

10  Plaintiff's Eleventh cause of action for cancellation of written instruments should be
11  dismissed without leave to amend because even if the assignment was improper Plaintiff has not
12  alleged an apprehension of serious injury – nor can he – and because the NOD was properly
13  recorded by CRC.

14  **C.   Each of Plaintiff's Loan Modification Claims Fail**

15  Plaintiff's third, fourth, fifth, sixth, seventh and eighth causes of action are all premised on
16  alleged misconduct during Plaintiff's loan modification review process. As the Court noted when
17  discussing the original complaint "Mr. Lester's allegations are unclear (despite being
18  voluminous)." The same is true of Plaintiff's FAC, which includes the same unclear explanation
19  of what representations were made. (*See* FAC ¶¶ 42, 44, 47, and 69). In addition, Plaintiff fails to
20  attach the Trial Payment Plan ("TPP"), that he allegedly entered into, or any of the letters from
21  Chase that he references in the FAC.

22  In addition to reiterating the laundry list of "misrepresentations alleged in the FAC,"
23  Plaintiff's Opposition focuses on three arguments related to the modification efforts:

24  - That Chase owed Plaintiff a fiduciary duty, which was breached. (Opposition
25     at pgs. 12-13).
26  - That Chase owed Plaintiff a general duty of care. (Opposition at pgs. 13-15).
27  - That Chase was obligated to provide a permanent modification after Plaintiff
28     complied with the Trial Payment Plan ("TPP"). (Opposition at pgs. 18-19).

Case3:12-cv-05491-LB Document20 Filed05/09/13 Page10 of 15

### 1. Chase Did Not Owe Plaintiff A Fiduciary Duty

Plaintiff argues that Chase owed him a fiduciary duty because "Defendants worked to get Plaintiff's absolute trust and total dependence upon their superior knowledge,". (Opposition at pgs. 12-13). However, Plaintiff's Opposition does not refer to any facts alleged in the FAC that support this assertion. Instead, Plaintiff attempts to argue that a fiduciary duty was created when Chase discussed the possibility of a loan modification with Plaintiff, and considered him for a modification under the Making Homes Affordable and Home Affordable Modification Programs because considering him for a modification under these guidelines made Chase a loan broker. (Opposition at pg. 13:18-25). Plaintiff does not, and cannot, cite to any authority that supports this position.

The fact that Chase offered Plaintiff the opportunity to be considered for a loan modification does not create a fiduciary duty, because Chase was not acting as a broker, it was acting as a loan servicer. *Shepherd v. American Home Mortgage Services, Inc.*, 2009 WL 4505925, *2 (E.D. Cal. 2009)( "[L]oan servicers do not owe a duty to the borrowers of the loans they service.") As opposing counsel is well aware, the MHA and HAMP programs are not independent financial institutions that can issue loans, they are federal programs which set forth loan modification guidelines. Under the definition of a "broker" provided in the Opposition, Chase does not qualify as a broker because there were no third party lenders that Chase acted as a middleman or negotiator for. Chase did not act as a broker and therefore did not owe Plaintiff a fiduciary duty.

### 2. Chase Did Not Owe Plaintiff A General Duty

Plaintiff's Opposition argues that the *Nymark* case cited by Chase does not create a bright line ruling stating that a lender never owes a borrower a general duty of care because the *Nymark* court simply applied the *Biakanja* test for whether or not a duty exists to the facts present in that case. (Opposition at pg. 13-15). Next, Plaintiff argues that the holding in *Jolley v. Chase Home Finance, LLC* is dispositive because the court in that case held that "Chase owed a general duty of care to a borrower in a **construction loan** context under the *Biakanja* factors." (Opposition at pg. 14:19-20)(emphasis supplied). Both of Plaintiff's arguments fail.

SF01DOCS\137903.1\C076651\0344369     9
REPLY ISO MOTION TO DISMISS - CASE NO. 3:12-CV-05491-LB

First, Plaintiff ignores the fact that the *Nymark* court did in fact reiterate the established legal principal that "*as a general rule*, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1096 (1991)(emphasis supplied)(*citing Wagner v. Benson*, 101 Cal.App.3d 27, 34-35 (1980), *Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn.*, 52 Cal.App.3d 484, 488 (1975), and *Bradier v. Craig*, 274 Cal.App.2d 466, 473 (1969)). After stating this general rule – which applies in this case – the *Nymark* court then turned to the novel question of whether a lender owes a duty of care when conducting an appraisal prior to a refinance, and applied the *Biakanja* factors. The issue presented in this case – whether Chase acted outside the scope of a conventional lender of money – is not novel, and has been conclusively established based on the general principal articulated in *Nymark*, that considering a borrower for a loan modification does not exceed the scope, and no duty is owed.

Second, the *Jolley* case, also relied upon by Plaintiff, is distinguishable from the instant case. At issue in *Jolley* was not a residential home loan, but rather a construction loan, in which the relationship between lender and borrower is ongoing. *Jolley v. Chase Home Finance, LLC*, No. A134019 at n. 16. (1st App. Dist. Filed 2/11/13). In light of this, the Court specifically noted that a "[construction] loan more readily gives rise to a cause of action for negligence in that contractual disbursements must be made with due care." *Jolley*, No. A134019 at n. 16. Moreover, the loan at issue in *Jolley* had a problematic history with the original lender and thus the Court found that the acquiring bank (the defendant) had a duty of care to investigate the history of the loan when dealing with Plaintiff. Here, in contrast, Plaintiff's loan was a residential loan, less likely to involve a duty of care owed by the lender, and all that is alleged is that Plaintiff applied for various types of loan modifications and was denied. Plaintiff's reliance on the *Jolley* decision is misplaced since the circumstances of that decision are distinguishable, and do nothing to displace the applicable general principal that Chase does not owe Plaintiff a general duty of care.

### 3. **Plaintiff Has Not Demonstrated That The *West* and *Wigod* Decisions Are Relevant Here, Nor Can He Because He Never Qualified For A HAMP Modification**

Plaintiff has alleged that he entered into a TPP with Chase, that he made the three TPP payments, and that he provided all of the documents required in the TPP. What he has not done is provided the TPP itself, and his argument that the *West* and *Wigod* decisions mandate the issuance of a permanent modification is therefore insufficiently plead.

Plaintiff's argument fails because both of the decisions discuss HAMP TPPs, and Plaintiff has never qualified for a HAMP TPP, or alleged that he participated in one. As stated in the FAC, he took out a $2,292,500 loan in 2007. (FAC ¶ 17). As explained in the *Wigod* case, the HAMP program applied to loans whose "current unpaid principal balance was no greater than $729,750." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012). Plaintiff's loan never qualified for a HAMP TPP because his unpaid principal balance was never less than $729,750. The FAC never alleges that he participated in a HAMP TPP (FAC ¶¶ 42-43), and based on the HAMP guidelines, he could not have, so his reliance on the *West* and *Wigod* cases, which deal solely with HAMP TPPs, for the proposition that a permanent modification was required fails.

For all of these reasons, Plaintiff's allegations concerning the modification efforts fail to support his claims since Chase did not owe him a fiduciary or general duty of care, and because he has not demonstrated that Chase was obligated to provide him with a permanent modification.

## D. **Each Of Plaintiff's Loan Modification Claims Fail**

### 1. **Plaintiff's Fourth Cause Of Action For Breach of Implied Covenant of Good Faith and Fair Dealing Fails Because He Has Not Alleged That Chase Breached The Relevant Agreements**

The FAC alleges that Chase breached the implied covenant of four contracts entered into by the parties: the Note, the DOT, the TPP, and the "verbal loan modification contract arising from Defendants' Modification Fraud." (FAC ¶ 76). As this Court may recall, it granted Chase's previous Motion to Dismiss on the grounds that the specific terms of the agreements or even the form of those agreements was not spelled out, and the FAC does not remedy these defects. (Order

1 at 18:20-19:2). Plaintiff's Opposition in fact further demonstrates that these agreements – to the
2 extent they have been alleged – were not breached. (Opposition at pgs. 19-21).

3 Plaintiff alleges that the purpose of the Note was frustrated when Chase collected
4 Plaintiff's loan payments because Chase was not the Note's beneficiary. (Opposition at pg. 21).
5 As discussed above, Chase was acting as the loan's servicer and collected payments on behalf of
6 the beneficiary, and Plaintiff has not, and cannot plead anything to the contrary.

7 Next, Plaintiff alleges that Chase frustrated the TPP by not giving him the permanent
8 modification required by the *West* and *Wigod* cases, but as discussed above, those holdings do not
9 apply because Plaintiff has not alleged that he had a HAMP TPP.

10 Finally, Plaintiff does not dispute that the "verbal loan modification contract" is barred by
11 the statute of frauds.

12 Chase has done nothing to frustrate the purpose of the Note, DOT, or the TPP, and
13 Plaintiff's fourth cause of action should be dismissed without leave to amend.

### 2. **Plaintiff Does Not Dispute That His Fifth, Seventh, And Eighth Causes Of Action For Various Types Of Fraud Are Not Specifically Plead As Required by FRCP 9(b)**

17 In addition to failing to state a claim for the reasons discussed above, Plaintiff does not
18 dispute that his fifth, seventh and eighth causes of action for fraud all fail because they are not
19 plead with the specificity required by FRCP 9(b), and fail to allege a misrepresentation or reliance.

### 3. **Plaintiff Does Note Dispute That His Sixth Cause Of Action For Negligent Infliction Of Emotional Distress Was Improperly Added In The FAC, And In Any Event Fails**

23 Plaintiff does not dispute that the Court gave him leave to amend his Negligent
24 Misrepresentation claim, but that he instead improperly plead a new claim for Negligent Infliction
25 of Emotional Distress. (FAC ¶¶ 87-91). Plaintiff does not dispute that it was improper for him to
26 allege this new cause of action because he did not have leave of the Court to do so. In addition,
27 for the reasons discussed above this negligence cause of action fails because Chase does not owe
28 Plaintiff a duty of care.

1   Rather than address these issues, Plaintiff's Opposition attempts to establish how the
2 commencement of foreclosure proceedings qualifies as severe emotional distress. (Opposition at
3 pgs. 21-23). Plaintiff cites to no relevant case law, and despite his opinions regarding English
4 common law's limitations on royal visitations (Opposition at pg. 23:1-2), he has not provided any
5 arguments relevant to the present situation. Plaintiff has provided no authority to support his
6 contention that he has suffered severe emotional distress, and his sixth cause of action fails in
7 addition to being procedurally impermissible and failing for lack of a duty owed.

8   **E.  Plaintiff Does Note Dispute That His Twelfth Cause Of Action For Violation of**
9   **California's Bus. & Prof. Code § 17200 Fails As A Matter Of Law**

10   Plaintiff's Opposition does not dispute that his Twelfth cause of action is based on all of
11 the same allegations that form the basis for his other causes of action. (Opposition at pgs. 23-25).
12 Moreover, Plaintiff does not allege that he has suffered any injury in fact and a loss of money or
13 property, and therefore does not dispute that he lacks standing to bring this claim.

14   As stated in the Motion, Plaintiff's claim under the unlawful prong fails because he has not
15 alleged any statutory or common law violations, his claim under the fraudulent prong fails along
16 with his fraud claims as described above, and his claim under the unfair prong fails because he has
17 not described anything other than a loan servicer attempting to work with a borrower to modify
18 the borrower's loan.

19   Plaintiff does not dispute that he lacks standing to bring his UCL claim, and that it fails
20 along with his other claims, since it is entirely based on his other claims.

21 **III. CONCLUSION**

22   Plaintiff's Opposition does nothing to remedy the defects identified by Chase in Plaintiff's
23 Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, and Twelfth Causes of Action. As
24 discussed above, the securitization of Plaintiff's Note did not prevent CRC from acting as the
25 Trustee, or Chase from acting as the beneficiary, and Plaintiff has not alleged how Chase
26 purported to act as the loan's beneficiary. In addition, Plaintiff's understandable frustration at
27 having been denied a loan modification does not mean that any fraud took place during the
28 modification review process, and Plaintiff has not plead any misrepresentations, let alone with the

1  required specificity.

2     Plaintiff's complaint fails to state a claim, and should be dismissed without leave to
3  amend.

4  Dated:  May 9, 2013               Respectfully submitted,

5                                     **BRYAN CAVE LLP**
                                       C. Scott Green
6                                      Daniel Rockey
                                       Thomas Lee
7

8                                     By:  /s/ *Thomas Lee*

9                                          Thomas Lee
                                           **Attorneys for Defendant**
10                                         JPMORGAN CHASE BANK, N.A.