**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| MARK LESTER,<br><br>     Plaintiff,<br>  v.<br><br>J.P. MORGAN CHASE BANK, et al.,<br><br>     Defendants.<br>_____/ | No. C 12-05491 LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Re: ECF No. 18] |

## INTRODUCTION

Plaintiff Mark Lester instituted this action against defendants J.P. Morgan Chase Bank, N.A. ("Chase") and Washington Mutual Bank ("WaMu") to, among other things, stop Chase from foreclosing on his home. *See generally* First Amended Complaint ("FAC"), ECF No. 17.[1] Chase now moves to dismiss Mr. Lester's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Motion, ECF No. 18.[2] Pursuant to Civil Local Rule 7-1(b), the court finds

---

[1] Citations are to the Electronic Case File ("ECF"), with pin cites to the electronically-generated page numbers at the top of the document.

[2] Mr. Lester timely served Chase with the complaint, and both Mr. Lester and Chase consented to the undersigned's jurisdiction. Proof of Service, ECF No. 4; Consent (Mr. Lester), ECF No. 5; Consent (Chase), ECF No. 9. But there is no indication in the record that Mr. Lester ever served WaMu with the complaint, and WaMu has neither consented to nor declined the undersigned's jurisdiction. *See generally* Docket. Nevertheless, because an unserved defendant is not a party for purposes of consent under 28 U.S.C. § 636(c), the undersigned may rule on Chase's

this matter suitable for determination without oral argument and vacates the June 20, 2013 hearing. For the reasons stated below, the court **GRANTS IN PART** and **DENIES IN PART** Chase's motion.

**STATEMENT**

On April 30, 2007, Mr. Lester borrowed $2,292,500 from WaMu to purchase property located at 934 Baileyana Road in Hillsborough, California (the "Property"). FAC, ECF No. 17 ¶¶ 1, 17. Mr. Lester and WaMu executed two documents: a promissory note in the amount of $2,292,500 that names Mr. Lester as "Borrower" and WaMu as "Lender" (the "Note"), and a deed of trust that secures the Note and names Mr. Lester as "Borrower," WaMu as "Lender," and California Reconveyance Corporation ("CRC") as "Trustee" (the "Deed of Trust"). Original Complaint, Exh. A, ECF No. 1-1 at 17-41 (Note and Deed of Trust); Request for Judicial Notice ("RJN"), ECF No. 8-1, Exh. A (Deed of Trust).³ The Deed of Trust states, in relevant part, that "the Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower [Mr. Lester]" and that "Borrower [Mr. Lester] irrevocably grants and conveys to Trustee [CRC], in trust, with power of sale," the Property. RJN, ECF No. 8-1, Exh. A.

---

motion to dismiss. *See Ornelas v. De Frantz*, C 00-1067 JCS, 2000 WL 973684, at *2 n.2 (N.D. Cal. June 29, 2000) (citing *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995)); *cf. United States v. Real Property*, 135 F. 3d 1312, 1316 (9th Cir. 1997) (holding that the consent of an individual who was not a party was not a precondition to the magistrate judge's jurisdiction).

³ In support of its previous motion to dismiss, Chase asked the court to take judicial notice of the following documents: (1) a deed of trust that was recorded in the official records of San Mateo County on May 15, 2007; (2) a notice of default that was recorded in the official records of San Mateo County on November 18, 2010; (3) a notice of trustee's sale that was recorded in the official records of San Mateo County on February 22, 2011; (4) a notice of rescission of the declaration of default and demand for sale that was recorded in the official records of San Mateo County on May 20, 2011; and (5) a notice of default that was recorded in the official records of San Mateo County on August 28, 2012. RJN, ECF No. 8-1, Exhs. A-E. And Mr. Lester asked the court to take judicial notice of an assignment of deed of trust that was recorded in the official records of San Mateo County on November 18, 2010. Plaintiff's RJN, ECF No. 11-1, Exh. A. Because these documents are matters of public record and neither party objected to the court taking judicial notice of the existence of these records, the court took judicial notice of them. 2/20/2013 Order, ECF No. 2-3 n.3; see *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). The court refers to the documents where necessary.

Mr. Lester alleges that "[o]n or before June 25, 2007 [], WaMu and CRC lost all interests in the Note and [Deed of Trust] by 'securitizing' the loan." FAC, ECF No. 17 ¶ 18. Mr. Lester alleges that this "securitization process" is "governed by" a pooling and servicing agreement (the "PSA"), which provides that "[t]he Trust will own the right to receive all payments of principal and interest on the mortgage loans due after the Cut-Off Date" of June 25, 2007. *Id.* ¶ 18-20. "According to the PSA, on June 25, 2007," WaMu sold the Note to WaMu Asset Acceptance Corporation, and "[l]ater that day," WaMu Asset Acceptance Corporation sold "pooled 'mortgage loans and related assets'" (which presumably included the Note and Deed of Trust) to WaMu Mortgage Pass-Through Certificates Series 2007-HY7 Trust (the "Trust"). *Id.* ¶ 19. Mr. Lester alleges that this means that "it is clear that the [Trust] owned all interests in the Note after June 25, 2007." *Id.* ¶ 20. Instead, only "LaSalle/BofA," the Trustee of the Trust, and not WaMu or CRC, "had a right to collect money on the Note or to foreclose under the [Deed of Trust]." *Id.* ¶¶ 23-25

On September 25, 2008, the Office of Thrift Supervision closed WaMu and appointed the FDIC as receiver. *See id.* ¶ 26. On the same date, Chase entered into a purchase and assumption agreement with the FDIC by which Chase acquired certain assets and assumed certain liabilities of WaMu. *Id.*; *see also* Original Complaint, ECF No. 1 ¶ 24 & n.1. Mr. Lester alleges that the Note and Deed of Trust could not have been included in these assets that Chase aquired from WaMu because "WaMu . . . already sold all [of its] interests in the Note [and Deed of Trust] to the [Trust] controlled by LaSalle/BofA more than a year before (i.e., on June 25, 2007)." FAC, ECF No. 17 ¶ 26.

Mr. Lester further alleges that "BofA officially took over LaSalle" on October 1, 2007. *Id.* ¶ 27. Thus, "only BofA had the right to collect money on the Note or to authorize foreclosure under the [Deed of Trust] in its capacity as Securitization Trustee of the [Trust]." *Id.* He also alleges that CRC also "lost its right to foreclose" as the Trustee of the Deed of Trust "after the securitization on June 25, 2007" and that "[n]othing indicates that [it] later reacquired such rights." *Id.* ¶ 29.

Concerned about declining property values and the increase in his mortgage payments that was scheduled to take place in 2014, Mr. Lester contacted Chase in November 2008 to inquire about receiving a loan modification. *Id.* ¶ 47. Chase's "agents, employees, and/or co-conspirators"

C 12-05491 LB
ORDER
3

allegedly advised him to default on the Note for at least 90 days to qualify for a loan modification with "affordable" monthly payments and that he otherwise appeared to qualify for one. *Id.* ¶¶ 42, 47. They also told him that "as long as all requested information was provided, [he] would definitely be given a three-month 'trial payment plan' ('TPP')" with affordable monthly payments and that "as long as [he] made all three TPP payments, [he] would definitely be granted a permanent modification with the same 'affordable' monthly payments as the TPP." *Id.* ¶ 42. They also stated that he "would not suffer credit damage, bank penalties or fees, or any other injury from default because it was part of the modification program" and that Chase "would not take steps to or actually foreclose upon the [P]roperty because of the default." *Id.*

Thereafter, Mr. Lester alleges that the following series of events occurred:

- On March 10, 2010, [he] faxed to Betty of Chase at (866) 282-5682 all requested information for loan modification.

- On June 12, 2010, [he] received a letter from Chase stating that they could not continue to review his modification because [he] was in a middle of a "Trial Period Plan" (see above). In the same letter Chase again requested additional information within 30 days.

- On June 29, 2010, [he] faxed to Tamura Croslin of Chase, at (866) 221-1019, a new package with all supporting document. Chase falsely claimed they never received the information.

- On July 7, 2010, [he] sent to Tamura Croslin at (866) 221-1019, information as specified. [He] later ended up hand delivering the file to the Walnut Creek Home Loan Modification Center and meeting with Christine Drau of Chase and going through all of the information with her because Chase claimed to have lost the information and would not accept the information by email.

- On September 23, 2010, the "Trial Period Plan" terminated based on false allegations that [he] did not provide needed information. This claim was patently false because [he] had sent the same information to Chase on at least four (4) separate occasions, with numerous updates.

- On November 17, 2010, [he] received a copy of Chase's assignment of the Deed of Trust and a Notice of Default.

- [He] sent in another loan modification packet at the request of Chase.

- On January 5, 2011, [he] received a letter stating that he was not qualified for HAMP because his loan was too large (information that Chase obviously knew at the time it first solicited a loan modification package from [him]).

- On February 22, 2011, [he] received a Notice of Trustee Sale scheduled for

       March 16, 2011.[4] The sale was postponed twice for reasons unknown to [him].[5]

- [He] reinstated the loan payoff amount in the middle of May 2011.

- In May 2011, [he] immediately applied once again for loan modification. He continued to make regular payments.

- On June 24, 2011, [he] received a letter declining his eligibility for HAMP (something the bank was well aware of before soliciting the modification package).

- [He] was told once again to stop making payments so that he could pursue modification. [He] stopped making payments in November 2011.

- On January 30, 2012, [he] received a letter notifying him that he was in default on the loan and $22,000 in arrears.

- [He] hired a lawyer to work on the Chase loan modification. [He] once again submitted all of the financial statements as requested.

- On March 30, 2012, [he] submitted another loan modification application with permissions to look at tax returns, credit report authorization, insurance information and property tax bills.

- On May 4, 2012, [he] submitted his fourth loan modification request.

- On July 12, 2012, [he] received a letter requesting additional financial information.

- On July 14, 2012, [he] submitted the requested information.

- On July 20, 2012, [he] received a letter from Chase notifying him that he would

---

[4] On February 22, 2011, CRC, "as Trustee" under the Deed of Trust, recorded a notice of trustee's sale in the official records of San Mateo County. RJN, ECF No. 8-1, Exh. C. The notice states, in relevant part, that "the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee [CRC], a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee [CRC], such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby." *Id.*

[5] On May 20, 2011, CRC, again "as Trustee" under the Deed of Trust, recorded a notice of rescission of the February 22, 2011 notice of trustee's sale. RJN, ECF No. 8-1, Exh. D. The notice of rescission lists the "Beneficiary" of the Deed of Trust as WaMu and states, in relevant part, that "[t]he Beneficiary under that certain Deed of Trust hereinabove described [WaMu], heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale" and that "[n]otice was heretofore given by the Beneficiary [WaMu], of breach of the obligations for which said Deed of Trust is security and of electrion to cause to be sold the property therein described." *Id.*

C 12-05491 LB
ORDER
                5

have an answer regarding the loan modification by August 2, 2012.

- [He] agreed to Chase's demand that he make an appointment with a Chase appraiser to come to his home and appraise the property for the loan modification. After the appointment was set, the appraiser called [him] and told him that she was not qualified to appraise the property because the value of the loan was over $1,000,000 and that Chase would reschedule with another appraiser.

- On July 30, 2012, [he] received a letter from Chase notifying him that he would receive an update on the loan modification by August 14, 2012. Another appraiser called to schedule an appointment toward the end of August.

- On August 2, 2012, [he] received a letter from Chase indicating that there "was help available at Chase at no fee" and that [he] should contact Chase and apply for a loan modification.

- On August 13, 2012, [he] received a letter from Chase notifying him to expect an update on the loan modification by August 28, 2012. Chase introduced to [him] a new representative, Hillary Riley at (877) 496-9032. [He left] numerous messages for Riley and received only one return message.

- An appraiser showed up to the property when [he] was not present. The appraiser did not leave a business card. A week later [he] checked in with Johana Garcia Ardon, apparently the Chase representative that replaced Hillary Riley. Johana explained that they had not received the appraisal. [He] left a voicemail with the second appraiser but received no return message after several calls. [He] filed a police report suspecting the supposed appraiser may have been unauthorized or worse. The appraisal company was contacted by the police and the appraisal of the property was ultimately submitted to Chase.

- On August 27, 2012, [he] received a letter from Chase indicating that "more time" was needed to process the loan modification and that he would receive an update of the loan modification by September 11, 2012.

- On August 28, 2012, the Notice of Default was recorded in San Mateo County Recorders Office but never mailed to [him].[6]

- On September 7, 2012, [he] received a letter from Chase notifying him that "more time" was required to process the loan modification.

- On September 12, 2012, [he] received a letter from Chase in response to his correspondence dated July 18, 2012, which was sent to the Consumer Financial

---

[6] On August 28, 2012, CRC, again "as Trustee" under the Deed of Trust, recorded another notice of default in the official records of San Mateo County which indicated that Mr. Lester was $163,994.34 in arrears on his loan. RJN, ECF No. 8-1, Exh. C. Like the previously recorded notice, the notice states, in relevant part, that "the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee [CRC], a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee [CRC], such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby." *Id.*

C 12-05491 LB
ORDER

6

> Protection Bureau. Chase's letter explained delays in the loan modification process were due to "difficulties in getting an appraisal of the property."
>
> - On September 12, 2012, [he] received a Notice of Default.
>
> - On September 14, 2012, [he] submitted to Chase additional information verifying income and other requested data in connection with this fourth modification attempt.
>
> - On September 20, 2012, [he] received a letter from Chase notifying him that after two reviews [he] was not eligible for a loan modification.

*Id.* ¶ 47.

Mr. Lester summarizes his allegations as follows:

> Defendants solicited and agreed to help [him] obtain loan modifications from third-party entities (e.g., the federal government). Defendants then created a "confidential relationship," arising from [his] reasonable reliance upon Defendants' vastly superior financial knowledge of such matters. Defendants next used intentional misrepresentations, false promises and guarantees of loan modification to trick [him] into a "strategic default" trap (i.e., to stop making payments for more than 90 days), so Defendants would have a pretext to foreclose on the property, would be able to buy [his] Note out of the securitization process for "pennies on the dollar," would be able to foreclose on the property and would otherwise be able to cover-up fatal "chain of title" problems created by the securitization debacle and Defendants fraud, deceit, forgery and other misconduct, which totally deprived Defendants of standing to foreclose (see above).
>
> [] Once Plaintiff engaged in Defendant's "strategic default" trap, [he] was required to repay not only the arrearages but unlawful fees and penalties in order to avoid foreclosure or reinstate the loan.

*Id.* ¶¶ 40-41.

Mr. Lester filed the instant complaint against Chase and WaMu on October 24, 2012. Complaint, ECF No. 1. He asserted the following so-called causes of action: (1) Temporary Restraining Order; (2) Declaratory Relief; (3) Promissory Estoppel; (4) Breach of Implied Covenant of Good Faith and Fair Dealing; (5) Deceit—Intentional Misrepresentation; (6) Fraud and Deceit—Negligent Misrepresentation; (7) Deceit—Suppression of Material Facts; (8) Deceit—Promise Made Without Intent to Perform; (9) Quiet Title to Real Property; (10) Accounting; (11) Cancellation of Instruments; and (12) Violation of California Business and Professions Code § 17200 *et seq*. *Id*. ¶¶ 84-287. Chase moved to dismiss his complaint, and the court granted in part and denied in part Chase's motion on February 20, 2013. 2/20/2013 Order, ECF No. 16. After a lengthy discussion of the merits of Mr Lester's claims, the court dismissed

1  with prejudice his first "cause of action" for a temporary restraining order, dismissed without
2  prejudice his second through ninth and eleventh and twelfth causes of action, and ruled that his tenth
3  cause of action for Accounting survives. *Id.* at 22.

   Mr. Lester filed a First Amended Complaint on March 28, 2013. FAC, ECF No. 17. On April
11, 2013, Chase moved to dismiss it. Motion, ECF No. 18. Mr. Lester opposes Chase's motion.
Opposition, ECF No. 19.

## ANALYSIS

### I. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party

repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. DISCUSSION

Mr. Lester's causes of action can be broken up into groups, based on the factual allegations underlying them. Accordingly, the court addresses Mr. Lester's causes of action in this way below.

### A. Mr. Lester's Causes of Action that Challenge Chase's Standing to Foreclose

Mr. Lester's first, second, ninth, and eleventh causes of action are premised on the argument that Chase has no standing to foreclose upon the Property. *See* Complaint, ECF No. 1 ¶¶ 84-88, 89-108, 208-19, 224-30. As an initial matter, the court notes that it previously dismissed with prejudice Mr. Lester's first "cause of action" for a temporary restraining order because a temporary restraining order is a remedy, not a cause of action. 2/20/2013 Order, ECF No. 16 at 14. It was improper for Mr. Lester to have alleged it once more as a separate cause of action. The court reiterates that Mr. Lester's first "cause of action" is **DISMISSED WITH PREJUDICE**.

As for Mr. Lester's second cause of action for declaratory relief, his ninth cause of action for quiet title, and his eleventh cause of action for cancellation of intruments – all of which challenge the securitization of the Note and Deed of Trust – the court in its 2/20/2013 Order previously explained that it was confused by Mr. Lester's theories of liability. *Id.* at 9-11. Now, as Chase correctly points out, Mr. Lester more clearly alleged in his First Amended complaint the following three theories of liability: (1) through the securitization process, the beneficial interest in the loan was transferred to the Trust so WaMu had no interest in the property to transfer to Chase, FAC, ECF No. 17 ¶¶ 17-29; (2) the loan principal was paid off in full when the loan was securitized and sold, *id.* ¶¶ 30-35; and (3) the foreclosure documents are fraudulent and invalid because they were the result of "robosigning," *id.* ¶¶ 36-39.

His first theory – that the securitization of the promissory note caused Defendants to lose their right to foreclose – fails, as it has been rejected by courts in this district as well as by the undersigned. *See*, *e.g.*, *Preciado v. Wells Fargo Home Mortgage*, No. 13–00382 LB, 2013 WL

1899929, at *5 (N.D. Cal. May 7, 2013); *Lombera v. Wells Fargo Bank, N.A.*, No. C 12–06463 LB, 2013 WL 1632702, at *2 (N.D. Cal. Apr. 16, 2013); *Tall v. Mortgage Elec. Registration Sys., Inc.*, No. C 12-05348 WHA, 2012 WL 6680183, at *4 (N.D. Cal. Dec. 21, 2012). Thus, to the extent that Mr. Lester alleges that the securitization of the promissory note caused Chase to lose their right to foreclose, the Ninth Circuit and California Supreme Court have not ruled on the issue, but the weight of persuasive authority in this district is that a plaintiff has "no standing to challenge foreclosure based on a loan's having been securitized." *Niranjan v. Bank of America,* C 12-05706 WHA, 2013 WL 1701602, at *2 (N.D. Cal. Apr. 18, 2013).

His second theory – that the loan principal was paid off in full when the loan was securitized and sold – also fails because it relies on the underlying securitization theory. *See Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10–cv–08185–ODW(FFMx), 2012 WL 6140962, at *7 (Dec. 11, 2012) ("Although Javaheri contends that the Lender received payment in full upon securitization of his Note, courts have consistently disagreed, holding that 'the sale or pooling of investment interests in an underlying note [cannot] relieve borrowers of their mortgage obligations.'") (quoting *Upperman v. Deutsche Bank Nat'l Trust Co.*, No. 01:10–cv–149, 2010 WL 1610414, at *2 (E.D. Va. Apr.16, 2010) and citing *Matracia v. JP Morgan Chase Bank, N.A.*, No. CIV. 2:11–190 WBS JFM, 2011 WL 3319721, at *3 (E.D. Cal. Aug. 1, 2011)); *Hague v. Wells Fargo Bank, N.A.*, No. C11–02366 TEH, 2012 WL 1029668, at *6 (N.D. Cal. Mar. 26, 2012) (dismissing with prejudice claim based in part on the theory that "the profit derived from securitization resulted in the proper party to whom Plaintiff was indebted being paid in full"); *West v. Bank of America, N.A.*, No. 2:10–CV–1966 JCM (GWF), 2011 WL 2491295, at *2 (D. Nev. June 22, 2011) (dismissing claim based on allegations that the "bank loaned money to [plaintiffs] to buy [the property], but later was paid in full when it sold the loan involved to others").

And his third theory – the foreclosure documents are fraudulent and invalid because they were the result of "robosigning" – fails because, as Chase points out, he alleges only vague and conclusory statements in this regard. Mr. Lester does not allege which documents were "robosigned" or provide any specific basis for his is allegation that there was any impropriety in the signing process. *See* FAC, ECF No. 17 ¶¶ 36-39. Instead, he refers to a "Consent Order" that Chase

allegedly entered into with the Federal Reserve Bank in April 2011 that purportedly concerns alleged improprieties in Chase's foreclosure review processes. *Id.* ¶ 37. He then alleges, "on information and belief[,] that the Consent Order has not stopped Chase from continuing said wrongful practices." *Id.* ¶ 38. These sweeping allegations concerning "robosigning" are not sufficient to withstand a motion to dismiss.

Accordingly, Mr. Lester's second, ninth, and eleventh causes of action challenging the securitization of the Note and Deed of Trust must be dismissed. Because the court previously provided Mr. Lester with a chance to cure the defects regarding these "securitization" and "robosigning" allegations but he failed to do so, the court **DISMISSES WITH PREJUDICE** Mr. Lester's second, ninth, and eleventh causes of action.

**B. Mr. Lester's Causes of Action that Relate to the Modification of His Loan**

Mr. Lester's third, fourth, fifth, sixth, seventh, and eighth causes of action all relate to his allegations concerning his attempts to have his loan modified. *See* FAC, ECF No. 17 ¶¶ 68-106. Chase does not move to dismiss Mr. Lester's third cause of action for promissory estoppel, *see* Motion, ECF No. 18 at 8, 17-24, 27, so the court addresses only his fourth, fifth, sixth, seventh, and eighth causes of action below.

*1. Fourth Cause of Action*

In his First Amended Complaint, Mr. Lester re-alleges his fourth cause of action for breach of the implied covenant of good faith and fair dealing. FAC, ECF No. 17 ¶¶ 75-80. The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract require him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *See* Judicial Counsel of California Civil Jury Instructions § 325 (2011); *see also Oculus Innovative Sciences, Inc.*

*v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007).

"Under California law, a claim for breach of the [implied covenant of good faith and fair dealing] is necessarily based on the existence of an underlying contractual relationship. The essence of the covenant is that no party to the contract will do anything which would deprive the others of the benefits of the contract." *Wolf v. Wells Fargo Bank, N.A.*, No. C11–01337 WHA, 2011 WL 4831208 at *4 (N.D. Cal. Oct. 12, 2011) (citing *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008)). To establish a breach of the covenant, then, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from that contract. *Id.*

The court previously dismissed Mr. Lester's fourth cause of action for breach of the implied covenant of good faith and fair dealing because it was unclear what the underlying contract is, what form it takes, or what its terms are. *See* 2/20/2013 Order, ECF No. 16 at 17-19. Now, he alleges that the underlying contracts are the Note, the Deed of Trust, the TPP, and "the verbal loan modification contract" in which Chase "offered a permanent modification with 'affordable' monthly payments." FAC, ECF No. 17 ¶ 76. He then alleges that Chase breached the covenant of good faith and fair dealing that is implied in them by: "(1) abusing the Note by trying to collect money on it even though Defendants lost that right because, inter alia, the Note had been sold to third-parties and/or was already fully paid-off"; "(2) abusing the [Deed of Trust] by threatening to foreclose to extort such wrongful payments"; "(3) abusing the [Deed of Trust] by threatening and attempting to steal [his] home and equity via foreclose without standing"; "(4) abusing the TPP contract by failing to give [him] the promised 'affordable' modification after [he] fully performed and fabricating excuses to justify such misconduct"; and "(5) abusing the verbal loan modification contract as described herein (e.g., fraudulently denying a permanent modification, using the contract to trick [him] into 'default trap' so Defendants could steal the home and equity by a dual-track foreclosure, etc.)." *Id.* ¶ 78.

Mr. Lester's claim fails to the extent that is based on "the verbal loan modification contract." *See Melegrito v. Citimortgage Inc.*, No. C 11–01765 LB, 2011 WL 2197534, at *13 (N.D. Cal. June 6, 2011). As Chase points out. such an oral agreement is barred by the statute of frauds. *See*

Motion, ECF No. 18 at 19-20.[7] "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." *See Secrests v. Security Nat. Mortg. Loan Trust 2002–2*, 167 Cal. App. 4th 544, 553 (2008). An "agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Id.* at 547. Thus, the alleged promise to modify Mr. Lester's original loan is subject to the statute of frauds. *Id.* Accordingly, to the extent that Mr. Lester's claim is based on "the verbal loan modification contract," it fails.

His claim also fails to the extent that it is based on the Note and the Deed of Trust. In his First Amended Complaint, Mr. Lester refers to the Note and the Deed of Trust only generally; he does not point to any language that would establish that the parties contemplated that he would have the ability to modify the terms of those agreements. This does not suffice. Indeed, as one court has explained after considering a similar situation:

> The Complaint alleges that "Implied in the deed of trust, mortgage note is a[n] implied covenant of good faith and fair dealing. Defendants agreed to a postponement of the Trustee Sale so that Plaintiff [could] enter into a loan modification. However, Defendants subsequently failed to begin the loan modification and postpone the trustee sale." . . . .
>
> "The implied covenant operates to protect the express covenants or promises of [a] contract . . . [it] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties'] agreement." Perez v. Wells Fargo Bank, N.A., No. 11–02279, 2011 WL 3809808, at *18 (N. D. Cal. Aug. 29, 2011) (internal quotation marks omitted). Importantly, "to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated." Id. Plaintiff has pointed to no specific contractual provision that was frustrated. Indeed, her claim seems to allege not a violation of 'the standing contracts with Defendants' but of the entirely separate promise Defendant allegedly made to postpone foreclosure while the loan modification was pending. That might form the basis for some cause of action, but not for breach of the implied covenant in the deed of trust and mortgage.

*Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191-92 (N.D. Cal. 2012). Accordingly, to the extent that Mr. Lester's claim is based on the Note or Deed of Trust, it must be dismissed. *Id.*; *see also Graham v. U.S. Bank, N.A.*, No. 13–cv–01613 NC, 2013 WL 2285184, at *6-7 (N.D. Cal. May 23, 2013).

---

[7] The court notes that Mr. Lester did not address this argument in his opposition.

Mr. Lester's claim also is based on the purported TPP.  Chase argues that his claim fails because he did not attach or directly quote from the TPP, Motion, ECF No. 18 at 18, but there is no steadfast rule in federal court that a plaintiff alleging breach of a written contract must "attach" the entire contract to his or her pleading and/or verbatim allege all "terms and conditions" of the contract.  *See Chancellor v. OneWest Bank*, No. C 12–01068 LB, 2012 WL 1868750, at *11 (N.D. Cal. May 22, 2012) (plaintiff need not attach contract); *Albizo v. Wachovia Mortgage*, No. 2:11–cv–02991 KJN, 2012 WL 1413996, at *11 (E. D. Cal. Apr. 20, 2012) (same); *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1102 n.7 (E.D. Cal. 2010) (collecting federal cases declining to apply state pleading requirements for breach of contract claims).  Mr. Lester alleges that he entered into a TPP that obligated him to provide "all requested information" and in exchange he would receive a three-month period of "affordable monthly payments."  FAC, ECF No. 17 ¶ 42.  He also alleges that "as long as [he] made all three TPP payments, [he] would definitely be granted a permanent modification with the same 'affordable' monthly payments as the TPP."  *Id.*  He further alleges that Chase stated that he "would not suffer credit damage, bank penalties or fees, or any other injury from default because it was part of the modification program" and that Chase "would not take steps to or actually foreclose upon the [P]roperty because of the default."  *Id.*  He also alleges that he in fact provided all requested information and in fact received a TPP and made all three payments under TPP, but that Chase failed to permanently modify his loan.  *Id.* ¶ 47.  While some of the terms of the contract remain obscured (e.g., the "affordable" payments), these terms presumably will be illuminated during the discovery process.  In the meantime, to the extent Mr. Lester's claim is based on the TPP, his allegations are sufficient at this stage, and his fourth cause of action **SURVIVES**.

   2. *Fifth, Seventh, and Eighth Causes of Action*

Mr. Lester's fifth cause of action is for "Deceit – Intentional Misrepresentation," his seventh cause of action is for "Deceit – Concealment of Material Facts," and his eighth cause of action is for "Deceit – Promise Made without Intent to Perform."  These are all fraud-based claims so the court addresses them together.

"A cause of action for fraud [under California law] requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by

the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001) (quoting *Wilkins v. Nat'l Broadcasting Co., Inc.*, 71 Cal. App. 4th 1066, 1082 (1999)); *see also* Cal. Civ. Code § 1572. Moreover, claims alleging fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)"); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (claims based in fraud "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud").

In its 2/20/2013 Order, the court dismissed these claims without prejudice because, in short, the court was unclear what, exactly, Mr. Lester alleged Chase represented to him or why, exactly, those representations were false or misleading. 2/20/2013 Order, ECF No. 16 at 19-20. In his First Amended Complaint, Mr. Lester makes his allegations a bit more clear. Broadly speaking, he alleges that (1) Chase misrepresented that it had the right to collect payments from him and proceed with foreclosure, *see* FAC, ECF No. 17 ¶¶ 82(1)-(4), 93(1)-(4), 99(1); (2) certain foreclosure-related documents were "robosigned," *see id.* ¶¶ 82(5), 93(5); and (3) Chase, through numerous representatives, told him that if he went into default, provided all requested documents, and made all payments required by the TPP, it would permanently modify his loan at "affordable" terms and would not foreclose upon the Property, and he would not face credit damages or fees, *see id.* ¶¶ 82(6)-(8), 93(6)-(16), 99(2)-(4). He also alleges that Chase purposefully concealed from him that the TPP was designed to trick him into defaulting and Chase always intended on foreclosing on the Property. *See id.* ¶¶ 93(6)-(16).

As Chase points out, Mr. Lester's allegations that Chase misrepresented that it had the right to collect payments from him and proceed with foreclosure and that certain foreclosure-related documents were "robosigned" are based on the "securitization" theories that the court rejected above. Thus, to the extent that his fraud-based claims rely upon these theories, they fail.

As for Mr. Lester's allegations that Chase snookered him into defaulting on the Note and stringing him along during the loan modification process – only to deny him a permanent loan

1 modification, as it always intended – Chase argues that his claims fail because he does not allege
2 that he relied on Chase's misrepresentations or was harmed by them. Motion, ECF No. 18 at 22.
3 The court disagrees. According to Mr. Lester's allegations, the reason he defaulted was because
4 Chase told him that he needed to default to obtain a TPP that would then lead to a permanent
5 modification. Mr. Lester relied on Chase's promise to permanently modify his loan once he
6 complied with the terms of the TPP, and he was harmed when Chase did not do so. Accordingly,
7 Mr. Lester's fifth, seventh, and eighth causes of action **SURVIVE**.

*3. Sixth Cause of Action*

Mr. Lester's sixth cause of action is for negligent infliction of emotional distress. Negligent infliction of emotional distress "is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Huggins v. Longs Drug Stores Cal.*, Inc., 6 Cal.4th 124, 129 (1993). To succeed on a claim for negligent infliction of emotional distress, a plaintiff must show "serious emotional distress actually and proximately caused by wrongful conduct on the part of a defendant who should have foreseen that the conduct would cause such distress." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010). Such a duty "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1993).

Chase argues that it did not owe Mr. Lester a duty of care, and the court agrees. "The general rule is that a financial institution does not owe a borrower a duty not to foreclose if the loan is in default, even if it previously promised not to foreclose, and also does not owe a duty to modify a loan." *Nardico v. JPMorgan Chase and Co.*, No. C 12–4891 PJH, 2013 WL 144096, at *1 (N.D. Cal. Jan. 11, 2013) (citing *Chanthavong v. Aurora Loan Servs., Inc.*, 2011 WL 6012353 at *8 (E.D. Cal. Dec.1, 2011); *Dooms v. Fed. Home Loan Mortgage Corp.*, 2011 WL 1232989 at *11–12 (E.D. Cal. Mar. 31, 2011)). "A financial institution generally 'owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional rule as a mere lender of money.'" *Id.* (quoting *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)). Here, none of Mr. Lester's allegations suggest that the general rule should not apply. Indeed, in both the original complaint and the First Amended Complaint, Chase is

described as engaging in activities traditionally done by lenders and/or servicers of loans. Accordingly, his sixth cause of action for negligent infliction of emotional distress is **DISMISSED WITH PREJUDICE**. *See Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 5:12–CV–01393–EJD, 2012 WL 3835080, at *9 (N.D. Cal. Sept. 4, 2012) (dismissing with prejudice plaintiff's negligent infliction of emotional distress claim against loan servicer for proceeding with a foreclosure sale).

### C. Mr. Lester's Two Other Causes of Action

Mr. Lester alleges two other causes of action, and they do not fit into the two groups above. Mr. Lester's tenth cause of action is for "Accounting," *see* FAC, ECF No. 17 ¶¶ 112-15, and the court previously ruled that this claim survived, 2/20/2013 Order, ECF No. 16 at 20-21.

Mr. Lester's twelfth cause of action is for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. *See* FAC, ECF No. 17 ¶¶ 121-28. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). To support a claim for a violation of the UCL, a plaintiff cannot simply rely on general common law principles. *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004).

The UCL also incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003).

Any individual who has "has suffered injury in fact and has lost money or property as a result of the unfair competition" may initiate suit. Cal. Bus. & Prof. Code § 17204. To have standing, a plaintiff must sufficiently allege that (1) he has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between

1    the defendant's alleged UCL violation and the plaintiff's injury in fact. *Rubio v. Capital One Bank*,
2    613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted).

3        Mr. Lester alleges violations of all three prongs of the UCL. For the "fraudulent" prong, he
4    alleges that Chase "collected money from [him] without any legal right" and "with full knowledge
5    [that] the Note was paid-off." FAC, ECF No. 17 ¶ 123. He also alleges that Chase engaged in
6    "robosigning." *Id.* He also alleges, as discussed earlier, that Chase failed to permanently modify his
7    loan after telling him it would do so if he complied with the terms of the TPP, which he did. *See id.*
8    ¶¶ 123-25. Finally, he alleges that Chase's negligence somehow was fraudulent. *See id.* ¶ 126. For
9    the "unfair" prong, he alleges that Chase's actions "were "immoral, unethical, oppressive,
10   unscrupulous, substantially injurious to consumers, and violated established public policy (e.g.,
11   fraud, dual-tracking – see above)." *Id.* ¶ 127. And for the "unlawful" prong, he alleges that Chase
12   "engag[ed] in conduct prohibited by civil, criminal, federal, state, municipal, statutory, regulatory or
13   court-made law (e.g., fraud, dual-tracking – see above)." *Id.* ¶ 128.

14       Chase argues that Mr. Lester's claim fails because he does not have standing to allege it.
15   Motion, ECF No. 18 at 24-25. The court disagrees. Mr. Lester alleges that Chase's misconduct
16   "destroyed [his] credit and wrongfully clouded title." *Id.* ¶ 123. Chase contends that Mr. Lester
17   suffered this harm because he voluntarily chose to stop making payments on the Note, but Mr.
18   Lester clearly alleges that he only defaulted because Chase told him that he had to so he could apply
19   for a TPP and then, upon receiving a TPP and completing its requirements, get a permanent loan
20   modification. This is a sufficient allegation of standing. Chase also argues that Mr. Lester's claim
21   fails because he does not identify any unfair, fraudulent, or illegal business practices, but as the court
22   concluded above, Mr. Lester's fraud-based claims (his fifth, seventh, and eighth causes of action)
23   survive. These claims provide bases for his UCL claim, insofar as it is based on his allegations
24   related to his attempt to modify his loan, although to the extent his claim is based on his
25   "securitization" and "robosigning" theories, his claim fails, however. Accordingly, his twelfth cause
26   of action for violation of the UCL **SURVIVES**.

27                                                       **CONCLUSION**
28       Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Chase's motion.

The court **DISMISSES WITH PREJUDICE** Mr. Lester's first, second, sixth, ninth, and eleventh causes of action cause of action. His third, fourth, fifth, seventh, eighth, tenth, and twelfth causes of action **SURVIVE**. Chase shall answer Mr. Lester's First Amended Complaint pursuant to FRCP 12(a)(4).

This disposes of ECF No. 18.

**IT IS SO ORDERED.**

Dated: June 18, 2013

_____
LAUREL BEELER
United States Magistrate Judge